THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOLYNN M. AULTMAN, Defendant-Appellant.

Fourth District   No. 4—92—0407

Opinion filed November 19, 1992.

D.J. Walsh, of Johnson, Frank, Frederick & Walsh, of Urbana, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and Peter C. Drummond, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant Jolynn M. Aultman was arrested for driving under the influence of alcohol (DUI) (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501(a)(2)). She appeals from the Champaign County circuit court's denial of her petition to rescind her statutory summary suspension of her driver's license (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1). She argues the trial judge erred because the arresting officer failed to provide the statutory motorist's warning or to request that she submit to a blood, breath, or urine test. We disagree and affirm.

Howard Michael Kearn, a Village of Fisher police officer, testified at defendant's hearing. Kearn testified he stopped defendant's vehicle at approximately 10:20 p.m. on March 1, 1992. The vehicle had turned onto Route 136 and was travelling in the wrong traffic lane for approximately 150 feet. Kearn activated his emergency equipment to pull over defendant's vehicle. When defendant exited her vehicle, Kearn observed she was unsteady and had a strong smell of alcohol on her breath. He also observed, initially hidden by a coat which he asked defendant's passenger to remove, a 12 pack of beer bottles with 2 open bottles half consumed.

After defendant's poor performance on two field sobriety tests, Kearn placed her under arrest for DUI. According to Kearn, defendant had no difficulty understanding the directions and requests which he provided to her before her arrest. However, from the time she was placed under arrest, and throughout Kearn's remaining contact with defendant, she hurled verbal abuse at him continually. When he radioed his dispatcher to report the arrest, he had to repeat his communication because it was drowned by defendant's screams and loud vulgarity.

Defendant persisted in hurling vulgarities at Kearn while he tried to learn from her whom he could call to pick her vehicle up rather than requiring it be towed. Because defendant responded only with screaming vulgarities rather than information, Kearn had defendant's vehicle towed.

Kearn and defendant travelled approximately 25 miles to the sheriff's department to process her arrest. Defendant continued to scream during the entire transport. While en route, defendant asked Kearn to stop the vehicle so she could urinate alongside the road. Kearn refused to stop the vehicle. When they arrived at the station, Kearn told defendant she could urinate as soon as she was searched. Before defendant was searched she urinated on herself.

Kearn explained to defendant she must listen to what he was going to read to her. He intended to read the standard warning to motorists. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c).) Defendant continued to hurl insults at Kearn and to scream while Kearn tried at least twice to read the warnings to her. Defendant screamed louder the further Kearn read. During each attempt to read the warnings, Kearn did not reach the portion informing defendant of the consequences of submitting or refusing to submit to the intoxication tests.

On Kearn's second or third attempt to read the warnings to defendant, he told her if she continued to be nonattentive he would have no choice but to consider her actions as a refusal. Kearn did not provide defendant with a personal copy of the warnings. When defendant's actions continued, Kearn told defendant her actions were viewed as a refusal.

Kearn's additional contact with defendant was again met with a tirade. He attempted to explain the procedures defendant faced. Over defendant's tirade, Kearn read to her the portion of the notice of statutory suspension necessary to inform her of the consequences of her summary suspension. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c).) He did not ask defendant to submit to a breath test.

On cross-examination Kearn explained it was impossible to read the relevant warnings over defendant's screaming. At the close of the hearing the trial judge denied defendant's request for rescission of her summary suspension. (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c).) He concluded defendant, by her actions, tried to defeat the reading of the statutory warnings.

Defendant initially argues her actions did not relieve Kearn of his statutory obligation to provide the summary suspension warnings to her either by reading them or by providing her a copy of them. She also argues Kearn was obligated to ask her to submit to the breath test. The State contends defendant's affirmative acts prevented Kearn from being able to provide the warnings and constituted a refusal on defendant's part to submit to the breath test.

Although no implied consent warnings were provided to defendant, and she was not asked to submit to further testing, the trial

judge properly rejected her request for rescission of her summary suspension. Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c).

Section 11—501.1(a) of the Illinois Vehicle Code (Code) provides:

"Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent *** to a chemical test or tests *** for the purpose of determining the alcohol, other drug, or combination thereof content of such person's blood if arrested ***." Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(a).

Section 11—501.1(c) of the Code states:

"A person requested to submit to a test as provided above shall be warned by the law enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of such person's privilege to operate a motor vehicle as provided in Section 6—208.1 of this Code. The person shall also be warned by the law enforcement officer that if the person submits to the test or tests provided in paragraph (a) of this Section and the alcohol concentration in such person's blood or breath is 0.10 or greater *** a statutory summary suspension of such person's privilege to operate a motor vehicle, as provided in Sections 6—208.1 and 11—501.1 of this Code will, be imposed." Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c).

■ Although the statute requires the warnings be provided to an individual arrested for DUI, and that defendant submit to further intoxication testing, when an officer's efforts to comply with the law are completely thwarted by a defendant's refusal to cooperate, the officer need not provide the warnings or further inquire about defendant's decision whether to submit to intoxication testing. Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c).

The statutory summary suspension procedures were enacted primarily to protect highway travellers and to evaluate whether motor vehicle drivers are intoxicated. (*Koss v. Slater* (1987), 116 Ill. 2d 389, 395, 507 N.E.2d 826, 829; *People v. Doty* (1987), 164 Ill. App. 3d 53, 56, 517 N.E.2d 338, 340.) Courts consistently construe section 11—501.1 of the Code liberally to accomplish its purpose of promptly removing impaired drivers from our highways. See *Doty*, 164 Ill. App. 3d at 56, 517 N.E.2d at 341; *People v. Ellerbusch* (1983), 118 Ill. App. 3d 500, 503, 454 N.E.2d 1166, 1168.

Defendant relies on rulings which have concluded the warnings must be provided to a driver apprehended for DUI. No case cited by defendant, however, addressed whether an arresting officer must pro-

vide the warnings when doing so would clearly be futile. Rather, the issues addressed were whether the warnings provided were sufficient or whether warnings were provided in instances where the defendant's actions were not obstructive to the officer's attempt to provide the warnings.

In *People v. Znaniecki* (1989), 181 Ill. App. 3d 389, 392, 537 N.E.2d 16, 17, the third district reversed the circuit court's denial of defendant's petition to rescind his summary suspension because the arresting officer warned defendant only of the consequences of submitting to a test which revealed a blood-alcohol content of more than .10, but not what could occur if defendant refused to submit to testing.

Similarly, this district concluded a defendant was improperly warned where the arresting officer informed him his refusal to submit to testing would result in a six-month suspension. Defendant actually faced a minimum two-year suspension because he had a previous DUI conviction. *People v. McCollum* (1991), 210 Ill. App. 3d 11, 12, 568 N.E.2d 493, 494.

Although the second district in *People v. Gafford* (1991), 218 Ill. App. 3d 492, 497, 578 N.E.2d 583, 586, reasoned that failure to provide the requisite warnings was grounds for rescinding a statutory summary suspension, the issue the court addressed there was whether the arresting officer provided the warnings despite defendant's testimony he was not warned.

Finally, defendant relies on *dicta* in a past ruling by this court. In *In re Summary Suspension of Driver's License of Trainor* (1987), 156 Ill. App. 3d 918, 925, 510 N.E.2d 614, 619, we noted the warning-to-motorists form accurately outlines the statutory warnings. We did so to indicate, where circumstances are different than in this case, evidence at the rescission hearing should include testimony to establish the officer provided the warnings to defendant. Again, however, defendant in *Trainor* had not obstructed the officer's attempts to provide the warnings.

Our previous ruling in *Doty* (164 Ill. App. 3d at 55, 517 N.E.2d at 340) provides guidance in determining an officer's duty to provide the required warnings when defendant's conduct obstructs the arresting officer's attempts to provide the warnings. In *Doty*, after defendant was stopped and informed she was under arrest, she fled from the scene before the arresting officer provided her the statutory summary suspension warnings. Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c).

This court viewed defendant's action in *Doty* as analogous to instances where defendant's conduct was viewed as an effective refusal

to submit to testing. Effective refusal has been found where the driver's intoxication at the time he is asked to submit to the test causes him to be unable to later recall if he was asked to submit to the test. (*People v. Solzak* (1984), 126 Ill. App. 3d 119, 123, 466 N.E.2d 1201, 1204.) This is true also where defendant claims his disorientation brought about by a motor accident caused him to unknowingly refuse to submit to further testing. *People v. Kirby* (1986), 145 Ill. App. 3d 144, 146, 495 N.E.2d 656, 658.

Refusal was also found where defendant consented to submit to the test but does not fully cooperate with its administration (*People v. Schuberth* (1983), 115 Ill. App. 3d 302, 305, 450 N.E.2d 459, 462), the driver's intoxication makes it impossible for him or her to comprehend the request to submit to intoxication testing (*People v. Carlyle* (1985), 130 Ill. App. 3d 205, 211, 474 N.E.2d 9, 13), and where the driver's intoxication causes him or her to fail to properly take the test despite the officer's repeated requests (*People v. Doherty* (1986), 144 Ill. App. 3d 400, 403-04, 494 N.E.2d 933, 936).

Defendant contends exceptions to the summary suspension proceedings (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501.1(c)) should not be engrafted lightly. We agree, but do not view her case as one in which the purpose of the proceedings would be furthered by rescinding her summary suspension. Defendant's deliberate actions interfered in the officer's efforts to provide the proper warnings to her and request her to submit to intoxication testing. Her actions made any further attempts by Kearn to do so futile. We will not reward defendant for her conduct.

In all but the most egregious circumstances, an arresting officer should provide the statutory warnings either by reading them to defendant or by providing defendant a written copy. Officer Kearn was continually harangued throughout the 25-mile drive to the sheriff's station. He tried to elicit cooperation from defendant. He sought to save her towing costs by locating someone to pick up her vehicle. He explained to defendant that she could urinate as soon as she was searched.

Kearn's concern and cooperation with defendant did nothing to allay defendant's screaming and stream of invective. She appeared to understand the procedures before her arrest. The evidence suggests she was sufficiently in control of her faculties to understand the ramifications of her actions. Kearn attempted to explain to her on at least two occasions that her actions would be viewed as a refusal to submit to further testing.

■ Under the circumstances presented in this case, defendant's conduct thwarted the officer's efforts to follow statutory mandates and provide the suspected intoxicated motorist the summary suspension warnings and request that she submit to further testing. Defendant's conduct was a constructive refusal to submit to the tests. The trial judge properly denied her request for rescission of her summary suspension.

Affirmed.

STEIGMANN and COOK, JJ., concur.