NO. 4-05-0297

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,

          Plaintiff-Appellant,

          v.

DAVID L. KAVANAUGH,

          Defendant-Appellee.

)

)

)

)

)))))

Appeal from

Circuit Court of

Macon County

No. 04DT148 

Honorable

James Coryell, 

Judge Presiding.

_________________________________________________________________

JUSTICE KNECHT delivered the opinion of the court:

Defendant, David L. Kavanaugh, was charged by citation with driving under the influence (DUI) (625 ILCS 5/11-501(a)(2) (West 2002)) and illegal transportation of alcohol (625 ILCS 5/11-502(a) (West 2002)).  Pursuant to section 11-501.1 of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501.1 (West 2002)), defendant was given a notice of statutory suspension because he refused to submit to or failed to complete testing.  The trial court granted defendant's amended petition to rescind the statutory summary suspension.  On appeal, the State argues the court erred in rescinding defendant's statutory summary suspension.  We reverse.

I. BACKGROUND

On July 25, 2004, defendant was charged by citation with DUI and illegal transportation of alcohol.  Five days later, a law-enforcement sworn report was filed.  The report indicated that "[b]ecause [defendant] refused to submit to or failed to complete testing, [his] driver's license and/or privileges will be suspended for a minimum of [six] months."  A "warning to motorist" form was also issued to defendant and filed with the trial court.  A confirmation of statutory suspension was filed on August 6, 2004, and stated defendant's driver's license would be suspended for a minimum of three years, beginning on September 9, 2004.

On September 1, 2004, defendant filed a petition to rescind the statutory summary suspension.  Defense counsel was substituted on December 13, 2004.  On February 1, 2005, defendant filed an amended petition to rescind the statutory summary suspension.  The amended petition alleged that (1) the arresting officer did not have reasonable grounds to believe defendant was driving a motor vehicle while under the influence of alcohol; (2) defendant was not properly warned by the arresting officer as provided in section 11-501.1 of the Code; and (3) defendant did not refuse to submit to and/or complete the required chemical test upon the request of the arresting officer.  Also on February 1, 2005, defendant filed a motion to quash his arrest and suppress evidence.

On February 24, 2005, the trial court held a hearing on defendant's motions.  Because the parties are familiar with the proceedings at the hearing, we discuss only the testimony pertinent to the issue in this appeal, 
i.e.
, whether the court erred in rescinding the summary suspension of defendant's driver's license because the warning given defendant was equivocal as to "whether or not he was being offered a test on portable [B]reathalyzer machine or just a mere portable unit."

Defendant was the only defense witness.  On July 25, 2004, at approximately 1:30 a.m., defendant was traveling eastbound on Route 121 and was about to enter Warrensburg, Illinois.  He had been at a class reunion near Lincoln, Illinois.  Defendant arrived at the reunion at 7:30 p.m. and had four rum and Cokes between 8 p.m. and 11 p.m.  In total, he consumed about a half pint of alcohol.  Defendant felt "fine" as he entered Warrensburg.  He did not feel he had been under the influence of alcohol.

Defendant was going to visit his friend Brian Hoffman in Warrensburg.  Defendant could not find where Hoffman lived so he was driving very slowly and stopping to look at houses while using his cellular phone to try to call Hoffman.  Defendant pulled his vehicle off the road and attempted to call Hoffman one last time.  No other traffic was in the area at this time.

A police car pulled up behind defendant's vehicle.  Officer Freimuth approached defendant and asked whether he had been drinking.  Defendant stated he had been drinking earlier in the evening.  Officer Freimuth asked defendant for his driver's license, which defendant provided.  Officer Freimuth then asked defendant to get out of the vehicle and take field sobriety tests.  Defendant agreed to do the field sobriety tests.

After defendant completed the field sobriety tests, Officer Owens arrived.  Officer Owens was carrying a little black box and told defendant he understood defendant did not want to finish the field sobriety tests and then asked defendant whether he would be willing to take a breath test.  Defendant said he would not take it there but would take it at the Macon County jail.  No warnings had been given to defendant about the consequences of refusing a breath test or taking one and failing.  After defendant refused to take the breath test, the officers handcuffed him and told him he was under arrest for DUI.  They put defendant in the back of the squad car of the first officer on the scene. 

The tow truck driver came and towed defendant's vehicle away.  Officer Freimuth drove defendant to the jail.  Officer Freimuth never gave defendant the warnings to motorist after informing defendant he was under arrest.  After being arrested and placed in Officer Freimuth's vehicle, defendant never refused to take a breath test.

On the way to Decatur, defendant asked Officer Freimuth if he would be able to do the field sobriety and take the Breathalyzer test at the Macon County jail, to which Officer Freimuth replied "You're burned up, man.  You had your chance."

Officer Freimuth was the State's only witness.  He testified he saw defendant driving at a slow rate of speed at 2:30 a.m. on July 25, 2004.  The vehicle was traveling at 44 miles per hour in a 55-mile-per-hour zone.  Officer Freimuth stated he saw defendant's truck cross the fog line twice and the centerline once.

Officer Freimuth witnessed defendant stop in the middle of the road.  He pulled up behind defendant's car and activated his emergency lights.  Defendant pulled to the side of the road.  Officer Freimuth approached the driver's window, which was open.  He "detected a strong odor of alcoholic beverage."  Defendant's eyes were red and glassy.  Defendant denied drinking earlier that night.

Officer Freimuth stated Chief Jesse Owens arrived before the field sobriety tests began.  Officer Freimuth administered the field sobriety tests.  According to Officer Freimuth, defendant struggled when performing the tests.

Following the field sobriety tests, Officer Freimuth asked defendant if he would take a preliminary breath test (PBT).  Officer Freimuth had a PBT device in his car.  Defendant refused to take the PBT test, and Officer Freimuth then arrested him for DUI.  Officer Freimuth then read defendant the warning to motorist and asked if he would submit to a Breathalyzer.  Defendant stated he would not.  Officer Freimuth filled out a form describing that he had given the warning and filed it with the trial court.

The Warrensburg police do not give breath tests at the Macon County sheriff's office.  Officer Freimuth stated the Warrensburg police department uses the RBT IV portable device to perform breath tests in the field.  The RBT IV is an approved evidentiary instrument for breath analysis.  See 20 Ill. Adm. Code ྷ1286.210(a)(3), as amended by 28 Ill. Reg. 10017 (effective June 30, 2004).  The RBT IV device was transported in Chief Owens' car.

While this was happening, Chief Owens was either in his squad car or "up by [Officer Freimuth's] windows."  The tow truck driver then came to take defendant's car and Officer Freimuth transported defendant to the Macon County jail.  After booking, defendant was released.

On cross-examination, Officer Freimuth testified Chief Owens requested that defendant take the PBT after the completion of the field sobriety tests.  Chief Owens had the portable breath machine in his hand.  Defendant refused, and at that point he was placed under arrest and put in Officer Freimuth's squad car.  Officer Freimuth could not recall whether Chief Owens ever removed the RBT IV from his car.  

Chief Owens did not testify.  

On March 23, 2005, the trial court denied the motion to quash arrest and suppress evidence in a written order.  The court found Officer Freimuth had probable cause to stop defendant and the evidence that was obtained was obtained pursuant to a valid stop and arrest.  

On March 24, 2005, the trial court rescinded the summary suspension of defendant's driver's license.  The court held "the warning to the [d]efendant on whether or not he was being offered a test on portable [B]reathalyzer machine or just a mere portable unit was equivocal.  Warning by the officer was not sufficient."

This appeal followed.

II. ANALYSIS

In this case there is no dispute defendant was pulled over, performed field sobriety tests, was asked to take and refused a PBT, was arrested and then placed in Officer Freimuth's squad car.  It is at this point where there is a variance in the testimony.  

Defendant claims he was never given the warning to motorist or asked to take a breath test after he was arrested.  Officer Freimuth stated he gave defendant the warning to motorist and requested that he submit to a breath test after arresting him.  The language of the trial court's order rescinding the suspension of defendant's driver's license implies that the court found defendant was given the warning to motorist.  However, it appears the court thought there was confusion as to whether defendant was being offered a PBT or a breath test under section 501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(a) (West 2002)), using an approved evidentiary device as set forth in the Administrative Code (20 Ill. Adm. Code ྷ1286.210(a)(3), as amended by 28 Ill. Reg. 10017 (effective June 30, 2004)), of which the refusal to take would result in defendant's driver's license being summarily suspended. 

The petitioner (defendant) carries the burden of providing a 
prima
 
facie
 case for rescission at a hearing on a petition for rescission of a statutory summary suspension of a driver's license.  
People v. Rozela
, 345 Ill. App. 3d 217, 222, 802 N.E.2d 372, 376 (2003).  The burden of presenting evidence justifying the suspension then shifts to the prosecution.  
Rozela
, 345 Ill. App. 3d at 222, 802 N.E.2d at 376.  Normally, the trial court's decision on whether defendant has met his burden will not be reversed unless against the manifest weight of the evidence.  See 
People v. Brummett
, 279 Ill. App. 3d 421, 430, 664 N.E.2d 1074, 1082 (1996).  However, the ultimate issue in this case is whether the Vehicle Code imposes a duty on the police to give the warning to motorist and then make sure defendant is not confused as to whether he is being offered a PBT or a breath test that is admissible by the State in a DUI prosecution.  This is an issue of statutory construction.

"The fundamental rule of statutory construction is to ascertain and give effect to the legislature's intent. [Citation.]  The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. [Citation.]  Where the language is clear and unambiguous, we will apply the statute without resort to further aids of statutory construction. [Citation.]  The construction of a statute is a question of law that is reviewed 
de
 
novo
. [Citation.]"  
People v. Ramirez
, 214 Ill. 2d 176, 179, 824 N.E.2d 232, 234-35 (2005).

"The statutory summary suspension procedures were enacted primarily to protect highway travellers and to evaluate whether motor vehicle drivers are intoxicated."  
People v. Aultman
, 237 Ill. App. 3d 304, 307, 604 N.E.2d 416, 419 (1992).  Courts liberally construe section 11-501.1 of the Vehicle Code (625 ILCS 5/11-501.1 (West 2002)) to accomplish its purpose of quickly removing impaired drivers from our highways.  
Aultman
, 237 Ill. App. 3d at 307, 604 N.E.2d at 419.

To understand the trial court's apparent thought process in rescinding the summary suspension on the basis it did, we must discuss the difference between a PBT and a breath test on a device from which admissible evidence of intoxication is obtained, and each test's role in the DUI-arrest process.

Section 11-501.5 of the Vehicle Code (625 ILCS 5/11-501.5 (West 2002)) is the statutory authority for requesting a PBT and states the following:

"(a) If a law enforcement officer has reasonable suspicion to believe that a person is violating or has violated [s]ection 11-501 [(625 ILCS 5/11-501 (West 2002))] or a similar provision of a local ordinance, the officer, 
prior
 
to
 
an arrest
, may request the person to provide a sample of his or her breath for a preliminary breath screening test using a portable device approved by the Department of State Police. 
The
 
person
 
may
 
refuse
 
the
 
test
.  The results of this preliminary breath screening test may be used by the law[-]enforcement officer for the purpose of assisting with the determination of whether to require a chemical test as authorized under [s]ections 11-501.1 and 11-501.2 [(625 ILCS 5/11-501.1, 11-501.2 (West 2002))], and the appropriate type of test to request.  Any chemical test authorized under [s]ections 11-501.1 and 11-501.2 [(625 ILCS 5/11-501.1, 11-501.2 (West 2002))] may be requested by the officer regardless of the result of the preliminary breath screening test, if probable cause for an arrest exists. The result of a preliminary breath screening test may be used by the defendant as evidence in any administrative or court proceeding involving a violation of [s]ection 11-501 or 11-501.1 [(625 ILCS 5/11-501, 11-501.1 (West 2002))]." (Emphases added.) 625 ILCS 5/11-501.5(a) (West 2002).

While we are not concerned with the standards of admissibility of PBT test results in this case, it is important to have a general understanding of the role of the PBT in the DUI-arrest process in order to understand what the trial court appears to have contemplated in this case.  

This court has held that PBT results are "not admissible by the State during its case in chief in a criminal proceeding involving a DUI charge" (
People v. Rose
, 268 Ill. App. 3d 174, 181, 643 N.E.2d 865, 870 (1994)), nor are they to be admitted into evidence by the State on rebuttal to impeach a defendant's testimony (
People v. Bass
, 351 Ill. App. 3d 1064, 1067, 815 N.E.2d 462, 465 (2004)).  As this court noted in 
Rose
, the legislative history of section 11-501.5 indicates the PBT tests "'are used to develop probable cause for the arrest and there is no penalty for refusing any of these tests.'"  (Emphasis omitted.)  
Rose
, 268 Ill. App. 3d at 180, 643 N.E.2d at 869, quoting 88th Ill. Gen. Assem., House Proceedings, April 20, 1993, at 22 (statements of Representative Parke).  Defendant acknowledges "that there need not be a warning prior to administering or refusing a [PBT]."  

On the other hand, section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(a) (West 2002)), commonly referred to as the "implied-consent law," states in pertinent part:

"(a) Any person who drives or is in actual physical control of a motor vehicle upon the public highways of this State shall be deemed to have given consent, subject to the provisions of [s]ection 11-501.2 [(625 ILCS 5/11-501.2 (West 2002))], to a chemical test or tests of blood, breath, or urine for the purpose of determining the content of alcohol, other drug or drugs, or intoxicating compound or compounds or any combination thereof in the person's blood 
if
 
arrested
 ***." (Emphasis added.)  625 ILCS 5/11-501.1(a) (West 2002).

The test results from the breath test referred to in this section are admissible by the State in a DUI prosecution.

Section 11-501.1(c) sets forth the warnings that law-enforcement officers are required to give a motorist prior to requesting that they submit to a breath test under section 11-501.1(a) and provides the following:

"(c) A person requested to submit to a test 
as
 
provided
 
above
 shall be warned by the law[-]enforcement officer requesting the test that a refusal to submit to the test will result in the statutory summary suspension of the person's privilege to operate a motor vehicle as provided in [s]ection 6-208.1 of this [c]ode.  [625 ILCS 5/6-208.1 (West 2002).]  The person shall also be warned by the law[-]enforcement officer that if the person submits to the test or tests provided in paragraph (a) of this [s]ection and the alcohol concentration in the person's blood or breath is 0.08 or greater *** a statutory summary suspension of the person's privilege to operate a motor vehicle, as provided in [
s]ections
 
6-208.1
 
and
 
11-501.1
 of this [c]ode [(625 ILCS 5/6-208.1, 11-501.1 (West 2002))], will be imposed."  (Emphasis added.) 625 ILCS 5/11-501.1(c) (West 2002).

The "if arrested" language of section 11-501.1(c) shows these warnings are to be given only after the motorist has been arrested.  Further, "[t]he plain language of section 11-501.1(c) requires officers to give the warnings contained in section 6-208.1."  
People v. Johnson
, 197 Ill. 2d 478, 488, 758 N.E.2d 805, 811 (2001).  The language of section 6-208.1 or 11-501.1(c) does not require that law-enforcement officers must warn motorists arrested on suspicion of DUI that it is a test that is used for evidentiary purposes that is being offered rather than a PBT.  If the legislature wanted to impose such a requirement on law- enforcement personnel, it could have clearly set forth such intent in the Vehicle Code.  For an example of a statute that has such clarity, see section 257.625a(6)(b) of the Michigan Compiled Laws, which sets forth a list of what a motorist arrested "shall be advised of," including that "[t]he results of the [breath] test are admissible in a judicial proceeding as provided under this act and will be considered with other admissible evidence in determining the defendant's innocence or guilt."  Mich. Comp. Laws ྷ257.625a(6)(b)(ii) (2004). 

Defendant argues that because the RBT IV, an approved evidentiary instrument, is portable, "its use makes it susceptible to subterfuge by unscrupulous members of law enforcement."  According to defendant, because of this susceptibility, law- enforcement personnel should be required to "make a clear request to take the test, including an unequivocal indication that it is not a PBT but is a [B]reathalyzer test on an evidentiary instrument which produces results that are admissible against the defendant."  Apparently, the argument is based on the premise the motorist needs to know this information because a refusal to take a PBT carries no consequences and the refusal to submit to an evidentiary breath test results in the summary suspension of one's driver's license.  We reject this argument. 

First, the warnings required by the Vehicle Code's implied-consent statute are not meant to enable the motorist to make an informed choice.  
Johnson
, 197 Ill. 2d at 487, 758 N.E.2d at 811.  "[T]he warnings benefit the State, not the motorists.  Specifically, warnings are an evidence-gathering tool for the State."  
Johnson
, 197 Ill. 2d at 487, 758 N.E.2d at 811.  Defendant's suggested warning is one that is meant to enable the motorist to make an informed choice which, as stated above, is not the intent of the implied-consent statute.

Moreover, as defendant acknowledges, there is no need to give the warning to motorist before a law-enforcement officer requests a motorist submit to a PBT.  If a motorist has been arrested and given the warning to motorist, it is not a PBT that is being requested.  If a test on a PBT device is given, the results would not be admissible by the State in a DUI prosecution against the motorist because no approved PBT device has been approved as an evidentiary device.  See  20 Ill. Adm. Code ྷྷ1286.210(a), 1286.240(a), as amended by 28 Ill. Reg. 10017 (effective June 30, 2004).  For a summary suspension to be upheld, defendant must have been given the warnings required by statute after being arrested for DUI and prior to the request to submit to testing.  If the warnings were not given, the suspension would be rescinded.  Thus, we see no reason for requiring law-enforcement personnel to differentiate between the two tests after a defendant has been arrested for DUI. 

More important, our supreme court does not require such clarity.  The only reason we see for requiring officers to clarify whether the test being offered is a PBT or a test whose results are admissible by the State in a DUI prosecution is so that a defendant motorist may understand the consequences of refusing the test, or in the case of a PBT, the lack of consequences for refusing to take the test.  Our supreme court has stated the following:

"[W]e find that the implied-consent statute 
requires
 
only
 
that
 
the
 
summary
 
suspension warnings
 
be
 
given
 
in
 
order
 
for
 
motorists suspected
 
of
 
drunken
 
driving
 
to
 
have
 
been properly
 
warned
.  
The
 
statute
 
does
 
not
 
require
 
that
 
a
 
motorist
 
understand
 
the
 
consequences
 
of
 
refusing
 
to
 
take
 
a
 
blood-alcohol test
 
before
 
the
 
State
 
may
 
summarily
 
suspend his
 
or
 
her
 
driver's
 
license
 
for
 
failure
 
to take
 
the
 
test
." (Emphasis added.)  
People v. Wegielnik
, 152 Ill. 2d 418, 424, 605 N.E.2d 487, 489-90 (1992).

The statute does not require the clarity defendant suggests.  Again, the purpose of the statute is not to enable the motorist to make an informed choice, it is an evidence-gathering tool for the State.  
Johnson
, 197 Ill. 2d at 487, 758 N.E.2d at 811.  "The threat of an extended suspension for motorists who refuse the test motivates individuals to take the test so that the State may gain objective evidence of intoxication."  
Johnson
, 197 Ill. 2d at 487, 758 N.E.2d at 811.  If the legislature intended for the warnings to have the clarity defendant requests, it would have stated so in the Vehicle Code.  Accordingly, we reverse the trial court's rescission of defendant's statutory summary suspension. 

III. CONCLUSION

For the reasons stated, we reverse the trial court's judgment.

Reversed.

TURNER, P.J., and STEIGMANN, J., concur.