# Illinois Official Reports

## Appellate Court

---

### *People v. Racila*, 2018 IL App (3d) 170361

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. LOUIS A. RACILA, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-17-0361 |
| Rule 23 order filed<br>Motion to publish<br>allowed<br>Opinion filed | November 19, 2018<br><br>December 18, 2018<br>December 18, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 17-DT-404; the Hon. Carmen J. Goodman, Judge, presiding. |
| Judgment | Reversed and remanded. |
| Counsel on Appeal | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Stephanie L. Raymond, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Ted P. Hammel and Kristen Messamore, of Hammel Law Offices, P.C., of Joliet, and Terrence J. Wallace, of Lockport, for appellee. |

JUSTICE LYTTON delivered the judgment of the court, with opinion. Justices McDade and Schmidt concurred in the judgment and opinion.

## OPINION

¶ 1    Defendant, Louis A. Racila, filed a petition to rescind the summary suspension of his driver's license following his arrest for driving under the influence of alcohol (DUI) (625 ILCS 5/11-501(a)(2) (West 2016)). The trial court granted the petition, and the State appeals. We reverse and remand with instructions.

¶ 2    On April 6, 2017, Officer Benjamin Gilbert stopped defendant for speeding and cited him for DUI. As a result, defendant received notice of summary suspension of his driver's license. Gilbert's sworn report stated that defendant was driving 16 miles per hour over the posted speed limit, had open cans of alcohol in his vehicle, displayed slurred speech, and had glassy and watery eyes. The report also indicated that defendant had not completed the standardized field sobriety tests as instructed. Defendant filed a petition to rescind the summary suspension, alleging, among other things, that the officer did not have reasonable grounds to believe that he had been driving under the influence of alcohol.

¶ 3    At the hearing, Gilbert testified that he "clocked" defendant's vehicle traveling 46 miles per hour in a 30-mile-per-hour zone. He made a U-turn and followed defendant's vehicle for a few blocks before pulling him over. He approached defendant's side of the vehicle and had a brief conversation with him. Gilbert testified that defendant responded appropriately to his questions but characterized his speech as "slurred." Defendant gave Gilbert his driver's license but could not find proof of insurance in the vehicle. Gilbert then asked defendant to exit the vehicle, and defendant cooperated with his request. He told defendant he was going to perform some field sobriety tests. He performed the horizontal gaze nystagmus (HGN) test. He then asked defendant to complete the walk-and-turn test. Gilbert testified that defendant had difficulty keeping his right foot in front of his left during the instruction phase and lifted his arms to help keep his balance as he completed the test.

¶ 4    Next, Gilbert administered the one-leg-stand test. Gilbert told defendant to start counting when he lifted his leg. Defendant started to sway around the number 13; at 16, he started hopping to his left. Gilbert then asked defendant to complete a breath test, after which Gilbert placed defendant under arrest for DUI.

¶ 5    On cross-examination, Gilbert testified that he had received and passed DUI training at the police academy. He stated that, when he initially spoke with defendant, he noticed that defendant had glassy, watery eyes and slurred speech. He also detected the odor of alcohol emitting from defendant's breath. In addition, he noticed a case of beer and three open beer cans lying in the backseat of the car.

¶ 6    Gilbert then explained the field sobriety tests in greater detail. He stated that during the HGN test, defendant exhibited a "lack of smooth pursuit" with distinct and sustained nystagmus at maximum deviation. He testified that the HGN test has six factors that indicate consumption and defendant exhibited all six. Regarding the walk-and-turn test, Gilbert testified that defendant began the test prior to the completion of his instructions. Defendant was told three times to keep his feet placed on an imaginary line before he was able to do so. While defendant was in the starting position, he was unable to maintain his balance, stepped

off the line, and once again started the test without being told to do so. During the test, defendant made an improper turn, used his arm for balance and stepped off the line. Gilbert testified that two or three of the eight factors in the walk-and-turn test typically indicate impairment and defendant exhibited five. Finally, Gilbert testified that the one-leg-stand test requires a minimum of two factors to indicate impairment and defendant indicated four.

¶ 7 Gilbert asked defendant to take a breath test using a portable device (PBT). The PBT registered a blood concentration of 0.099. Gilbert asked defendant when defendant had his last drink, and defendant responded 2 p.m. Gilbert testified that at that point he was of the opinion that defendant had consumed alcoholic beverages and could not safely operate a motor vehicle.

¶ 8 The video from Gilbert's squad car was also admitted into evidence. In the video, Gilbert asks defendant if he has consumed any alcohol or drugs. Defendant says, "No, absolutely not." Gilbert then asks if defendant has any previous tickets or convictions. Defendant responds, "No, not in the last five years…I mean I had a DUI in 2012." Gilbert says "ok, but nothing else," and defendant says, "No." He then asks defendant and the passenger, "What's going on with the open beer cans in the back?" Defendant says that he and the passenger had them at work. The passenger says, "I drank them. That's why he's driving and I'm not." Gilbert goes to his squad car and then returns and asks defendant to exit the vehicle. Defendant does so voluntarily, without incident, and they both walk to the back of defendant's car. Gilbert informs defendant that he is going to have him take a few tests.

¶ 9 During the walk-and-turn test, defendant has trouble standing on a straight line while he is waiting for instructions. He asks Gilbert if he can take his shoes off, and Gilbert says, "Sure." Defendant starts the test before Gilbert is finished with the instructions. He then apologizes and goes back to the starting position. Gilbert moves to the side so defendant can walk forward. Defendant sways to the right, loses his balance, and moves his right foot off to the side to maintain his equilibrium. He then starts the test again before he is told to do so. Once he starts the test, he uses his arms to stay balanced and steps off the line twice to keep from losing his footing. On the one-leg-stand test, defendant loses his balance as he counts past 13 and then hops to the left several times as he counts to 17 and 18. As he starts to fall to the left, he puts his foot down and stops the test. Gilbert then tells defendant to stay put and walks back to his squad car. When he returns from the squad car, he has a portable device in his hand and asks defendant to blow into it. Defendant agrees to do so and blows into the tube. Gilbert again asks defendant how many drinks he has had. Defendant admits that he drank alcohol but says that he had his last drink at 2 p.m. Gilbert asks defendant to put his hands behind his back and informs him that he is under arrest for DUI. At the end of Gilbert's testimony, the State moved for a directed finding, which the trial court denied.

¶ 10 During the State's case-in-chief, Gilbert testified that he stopped defendant's vehicle around 7 p.m. Defendant's first response regarding how much alcohol he had consumed was that he had nothing to drink, but he later responded that he had a beer at 2 p.m. When asked why he gave the officer conflicting responses, defendant replied, "I do not recall why I did that." He admitted that he had two beers around 2 p.m.

¶ 11 The trial court found in favor of defendant and granted the petition to rescind. Regarding the field sobriety tests, the court stated that "[t]he fields are just a factor. A lot of people can't do the fields." It acknowledged, however, that having open alcohol would be a factor along with the field sobriety tests. As for the field sobriety tests, the court stated that it "didn't see any balance problems whatsoever." The court found that Gilbert lacked probable cause to arrest

defendant for DUI and granted the petition to rescind his summary suspension.

¶ 12                                              ANALYSIS

¶ 13       The State argues that the trial court erred in granting the petition to rescind defendant's statutory summary suspension. Specifically, the State contends that the evidence at the hearing established that Gilbert had reasonable grounds to believe defendant committed a DUI violation.

¶ 14       At a hearing to rescind statutory summary suspension, a defendant carries the burden of making a *prima facie* case for rescission. *People v. Kavanaugh*, 362 Ill. App. 3d 690, 695 (2005). Once the defendant has done so, the burden of presenting evidence to justify the suspension shifts to the State. *Id.* A reviewing court must be deferential to the trial court's factual findings and reverse those findings only if they are against the manifest weight of the evidence. *People v. Wear*, 229 Ill. 2d 545, 561 (2008). A reviewing court is free, however, to assess the facts and draw conclusions and, thus, review *de novo* the legal ruling on whether a petition to rescind should have been granted. *Id.* at 562.

¶ 15       The issue at the summary suspension hearing in this case was whether the arresting officer had reasonable grounds to believe that defendant was driving while under the influence of alcohol. In this context, "reasonable grounds" is synonymous with "probable cause." *Id.* at 560. "Probable cause to arrest exists when the facts known to the officer at the time of the arrest are sufficient to lead a reasonably cautious person to believe that the arrestee has committed a crime." *Id.* at 563. A probable cause determination must be based upon the totality of the circumstances and must rise to a level higher than mere suspicion but less than proof beyond a reasonable doubt. *People v. Lee*, 214 Ill. 2d 476, 484 (2005). As this court has noted:

> " 'Probable cause to arrest a motorist for DUI has been commonly established by the testimony of the arresting officer, in spite of the defendant's contradictory testimony, that the motorist had about him or her the odor or strong odor of alcohol, had slurred speech or had red and glassy eyes. [Citations.] Generally, these observations are supplemented by other observations apparent to the officer or inferred from his observations such as speeding, weaving, erratic driving, driving on the wrong side of the road, being stuck in a ditch [citation] or *** being in a vehicle which is stuck in the mud.' " (Emphasis omitted.) *People v. Day*, 2016 IL App (3d) 150852, ¶ 36 (quoting *People v. Wingren*, 167 Ill. App. 3d 313, 320-21 (1988)).

¶ 16       Here, Gilbert testified that he smelled the odor of alcohol on defendant's breath and that defendant had glassy, watery eyes. He further testified that defendant failed the HGN test and struggled with balance on both the walk-and-turn test and the one-leg-stand test. The video supports the officer's assessment of defendant's performance. On the video, defendant stumbles to the right and loses his balance during the walk-and-turn test and hops to the left and puts his foot down to maintain his balance on the one-leg-stand test. In addition, defendant had open cans of beer in his vehicle and admitted that he had consumed alcohol. Given defendant's physical signs of alcohol consumption, open cans of alcohol in the vehicle, admission of alcohol consumption, and failed field sobriety tests, Gilbert had reasonable grounds to believe defendant was driving under the influence of alcohol.

¶ 17       In *People v. Rush*, 319 Ill. App. 3d 34 (2001), the defendant was arrested for DUI and served with a written notice of statutory summary suspension. Defendant moved to suppress

the State's evidence and filed a petition to rescind his suspension, arguing that the arresting officer did not have reasonable grounds to believe that he was driving under the influence of alcohol. *Id.* at 35. The trial court granted the defendant's motion and petition to rescind, and the State appealed. The appellate court found that the officer had probable cause to arrest the defendant for DUI when the defendant had slurred but understandable speech, smelled strongly of alcohol, admitted to drinking several beers the night before, had open alcohol in his car, failed one of the field sobriety tests, had "jerking" eyes during the HGN test, and registered an alcohol concentration of 0.07 on the preliminary breath test. *Id.* at 40-41. In this case, defendant exhibited similar indicators of impairment, with the addition of a higher preliminary breath test reading and failing all the administered field sobriety tests. These facts demonstrate that Gilbert had probable cause to arrest defendant for DUI. Thus, the trial court erred in granting the petition to rescind the statutory summary suspension.

¶ 18    In support of his contention that Gilbert did not have probable cause to arrest him for DUI, defendant cites *Day*, 2016 IL App (3d) 150852. However, this case is readily distinguishable. In *Day*, the defendant was pulled over for excessive noise emanating from his exhaust pipe; no other driving infractions were noted. In addition, the field tests were administered in the rain, and the arresting officer admitted that they should have been given on a flat, dry surface. This court determined that the field sobriety tests were administered in an improper fashion due to the officer requesting that they be performed on a wet surface in the rain. We stated that the improper administration significantly impaired the probative weight that could be given to those tests. We concluded that the defendant's performance of the field sobriety tests did not give the arresting officer probable cause to arrest him for DUI and that the defendant's consumption of alcohol and his bloodshot eyes, without more, did not give the officer reason to believe the defendant had been driving under the influence of alcohol. *Id.* ¶ 38.

¶ 19    In this case, the facts are distinguishable. The field sobriety tests given to defendant were not administered in the rain or in an otherwise improper manner. As demonstrated in the video, the weather was clear, and the pavement was dry and level. Moreover, there are additional facts that support defendant's arrest for DUI. Specifically, defendant was stopped for speeding, which is an observation that supplements other observations made by an officer in support of probable cause to arrest a motorist for DUI. See *Rush*, 319 Ill. App. 3d at 35. Defendant's breath also smelled of an alcoholic beverage, he had open cans of beer in the car, and he admitted that he had been drinking. These additional factors, which were not present in *Day*, support Gilbert's probable cause to arrest defendant for a DUI violation.

¶ 20    Under the circumstances, we conclude that Gilbert had probable cause (or reasonable grounds) to believe that defendant had been operating a motor vehicle while under the influence of alcohol. We therefore reverse the trial court's order granting defendant's petition to rescind.

¶ 21                                    CONCLUSION

¶ 22    The judgment of the circuit court of Will County is reversed, and the cause is remanded to the trial court to enter an order denying defendant's petition to rescind.

¶ 23    Reversed and remanded.