# Illinois Official Reports

## Appellate Court

---

### *People v. Garcia-Gutierrez*, 2019 IL App (3d) 180283

---

| | |
|---|---|
| Appellate Court Caption | THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. JUAN CARLOS GARCIA-GUTIERREZ, Defendant-Appellee. |
| District & No. | Third District<br>Docket No. 3-18-0283 |
| Filed | May 29, 2019 |
| Decision Under Review | Appeal from the Circuit Court of Will County, No. 17-DT-1434; the Hon. Carmen Goodman, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |
| Counsel on Appeal | James W. Glasgow, State's Attorney, of Joliet (Patrick Delfino, David J. Robinson, and Thomas D. Arado, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.<br><br>Ted P. Hammel and Kristen Messamore, of Hammel Law Offices, P.C., and Frank P. Andreano, of Andreano & Lyons, both of Joliet, for appellee. |

PRESIDING JUSTICE SCHMIDT delivered the judgment of the court, with opinion.
Justice Carter concurred in the judgment and opinion.
Justice Lytton specially concurred, with opinion.

## OPINION

¶ 1        The State appeals the rescission of the statutory summary suspension of the driver's license of defendant, Juan Carlos Garcia-Gutierrez. The State argues that the circuit court erred by finding the warning to motorist inadequate when read to defendant in English. We reverse the judgment of the circuit court and remand the cause with instructions to enter an order denying defendant's petition to rescind.

¶ 2                                I. BACKGROUND

¶ 3        On December 22, 2017, the State charged defendant with driving under the influence (DUI) pursuant to section 11-501(a)(2) of the Illinois Vehicle Code (625 ILCS 5/11-501(a)(2) (West 2016)) after a traffic stop for speeding (*id.* § 11-601(b)).

¶ 4        On January 9, 2018, defendant filed a petition to rescind the statutory summary suspension of his driver's license.

¶ 5        On March 15, 2018, the circuit court of Will County held a hearing on defendant's petition.

¶ 6        At the hearing, Deputy Steven Mathis of the Will County Sheriff's Department testified. Mathis initially stopped defendant for speeding. He asked defendant for his driver's license. Defendant complied. Mathis then determined that defendant was possibly driving under the influence, requiring field sobriety tests to be administered. Mathis asked defendant to exit the vehicle. Defendant complied. Mathis began to administer field sobriety tests. Mathis at this time noticed there was a language barrier between himself and the defendant; defendant could only speak "broken English." Defendant's primary language was Spanish.

¶ 7        Mathis requested the assistance of Deputy Marco Villalobos. Villalobos arrived on the scene to explain directions for the field sobriety tests in Spanish. Mathis arrested defendant for DUI after conducting field sobriety tests and a portable breath test.

¶ 8        Mathis noted in his sworn report that defendant presented with a strong odor of alcohol on his breath and glassy eyes and admitted to consuming six beers earlier in the evening.

¶ 9        Mathis transported defendant to the Will County jail. Villalobos did not accompany Mathis to the jail. Defendant, upon arriving at the jail, followed the commands of Mathis in moving about the jail without incident. Mathis then read to defendant the warning to motorist in English. Mathis excluded the warning pertaining to bus drivers and persons under the age of 21. Defendant signed the warning.

¶ 10        Defendant testified, through the use of an interpreter, that he was not given certain warnings contained in the warning to motorist. Specifically, defendant claimed he was not warned that, depending on the results of the alcohol breath test, his license may be suspended; nor was he warned about minimum suspensions based on prior DUI offenses. On cross-examination, defendant testified that Mathis read him the document that he had signed. He

asked Mathis no questions about the document that was read to him. He signed the document even though he did not understand it.

¶ 11    Mathis would later testify that, to his knowledge, the warning to motorist is statutorily required, that he was required to recite it to individuals, and that he was not responsible for whether or not the individual understood the warning. Mathis further stated, based on his training, that the warning need only to be read verbatim, in English, and then signed by the individual.

¶ 12    Mathis asked defendant to submit to a breath test while at the jail. Defendant provided multiple inadequate breath samples. Correctional Deputy Martinez was brought into the room to explain, in Spanish, that defendant needed to provide a long and drawn-out breath for the test.

¶ 13    Defendant failed to complete the breath testing, resulting in his driving privileges being summarily suspended. Mathis served immediate notice of the statutory summary suspension to defendant.

¶ 14    The trial court granted defendant's motion to rescind the summary suspension, finding the warning to motorist given to defendant inadequate because it was given in English when other directions, such as the field sobriety test and how to provide a sample for the breath test, were given in Spanish. In doing so, the trial judge acknowledged that the State correctly stated the law, including supreme court cases holding that defendant's understanding of the warning is irrelevant. She stated that she felt the law was "ridiculous."

¶ 15    The State filed a motion to reconsider. The trial court denied the motion.

¶ 16    The State appeals. We reverse.

¶ 17                                    II. ANALYSIS

¶ 18    The State argues that the trial court erred in granting the rescission of the statutory summary suspension in favor of defendant. Specifically, the State contends that the warning to motorist when read verbatim in English to an individual lacking English language skills is, nonetheless, sufficient. Defendant argues that there is a conflict in the record regarding certain warnings given to him. Defendant also argues that the trial court did not err in granting the rescission of the statutory summary suspension. Finally, defendant declares that when a deputy was provided to explain directions in Spanish, he was conferred an additional right not required by law.

¶ 19    At a hearing to rescind statutory summary suspension, defendant carries the burden of establishing a *prima facie* case for rescission. *People v. Kavanaugh*, 362 Ill. App. 3d 690, 695 (2005). "Once the defendant has done so, the burden of presenting evidence to justify the suspension shifts to the State." *People v. Racila*, 2018 IL App (3d) 170361, ¶ 14 (citing *Kavanaugh*, 362 Ill. App. 3d at 695). A reviewing court must be deferential to the trial court's factual findings and reverse those findings if they are against the manifest weight of the evidence. *People v. Wear*, 229 Ill. 2d 545, 561 (2008). However, a court of review is free to assess the facts and draw conclusions, reviewing *de novo* the legal ruling on whether a petition to rescind should have been granted. *Id.* at 562. We review the instant case *de novo*.

¶ 20    As a preliminary point of contention, defendant argues that the record contains a factual conflict concerning warnings given to him at the Will County jail. After reviewing the record, we do not find the factual inconsistency concerning the warnings of which defendant

complains. Mathis testified that he read defendant the warning to motorist verbatim in English. Mathis excluded the warnings concerning persons under the age of 21 and bus drivers. Defendant had the burden of establishing the case for rescission, and there is no evidence in the record that defendant is a member of either of these groups. Further, to hold that any information that does not concern the defendant warrants rescission defeats the purpose of the statute. *People v. Johnson*, 197 Ill. 2d 478, 488-89 (2001).

¶ 21　　Defendant testified that he signed the warning to motorist after Mathis read it to him. He did not ask any questions even though he did not understand what Mathis read to him. Defendant now argues that he understood the warnings enough, when given in English, to know that certain warnings were not given.

¶ 22　　We find no factual conflict in the record as to whether Mathis read the warning to motorist to defendant verbatim. Furthermore, the trial court found Mathis read the warning in English.

¶ 23　　　　　　A. Warning to Motorist Was Adequate When Read in English

¶ 24　　We turn now to the adequacy of the warnings given by Mathis. The issue at the summary suspension hearing, and here, is whether the warning to motorist read by Mathis to defendant in English was adequate despite other directions being provided in Spanish. The Illinois Supreme Court has found that "the implied-consent statute requires only that the summary suspension warnings be given in order for motorists suspected of drunken driving to have been properly warned." *People v. Wegielnik*, 152 Ill. 2d 418, 424 (1992). "The statute does not require that a motorist understand the consequences of refusing to take a [breath]-alcohol test before the State may summarily suspend his or her driver's license for failure to take the test." *Id.* "[T]he overriding purpose of the statutory scheme is to make the highways safer [citation], and the implied-consent statute, being remedial in nature, should be liberally construed to accomplish this goal [citations]." *Id.* at 425.

¶ 25　　The "warnings required by the implied-consent statute are not meant to enable an 'informed choice.'" *Johnson*, 197 Ill. 2d at 487. "In fact, the warnings benefit the State, *not* the motorists." (Emphasis added.) *Id.* "Specifically, warnings are an evidence-gathering tool for the State." *Id.* Our supreme court in *Johnson* then went on to reject the appellate court's finding that the test to be applied was whether the motorist was given a warning that was objectively accurate and informative to the motorist so that the individual could make an informed choice. *Id.* at 487-88.

¶ 26　　The trial court in the case at bar found the recital of the warning to motorist inadequate because Mathis knew there was a language barrier. The trial court relied on the fact that Mathis read the warning to motorist in English, despite using the assistance of a Spanish-speaking deputy in gathering evidence against defendant during field sobriety tests and the breath test. The trial court then, in the hearing on the motion to reconsider, referenced the difference between proper and confusing warnings to defendant regarding the warning to motorist before relying on its previous ruling in denying the motion. *Johnson* and *Wegielnik* mandate a finding that the trial court erred.

¶ 27　　The record contains no evidence that the warnings given to defendant were improper, confusing, or inadequate. Deputy Mathis testified that he read the relevant portions of the warning to motorist verbatim to defendant. Mathis then asked defendant to sign the document that was read. Defendant admitted that he signed the document Mathis read. Defendant alleges he did not understand the warnings read to him, yet asked Mathis no questions. We note that

as described above, the legislature has created no exception in the implied-consent law for motorists who do not speak English, and courts shall not read into the statutory language a requirement that law enforcement personnel warn motorists suspected of drunken driving in whatever language they may speak. *Wegielnik*, 152 Ill. 2d at 424-26.

Defendant had no right to have the warning to motorist read to him in a language other than English. The supreme court has already made that clear. *Wegielnik*, 152 Ill. 2d 418; *Johnson*, 197 Ill. 2d 478. As are all lower courts, the trial judge is bound to apply clear supreme court precedent, notwithstanding her disagreement with it.

### B. Defendant Was Not Conferred an Additional Right

Finally, defendant points to a line of cases standing for the premise that once a motorist suspected of being intoxicated is accorded rights not required by law, revocation of those rights will negate the effect of any purported refusal to submit to a breath test. See *People v. Elledge*, 144 Ill. App. 3d 281 (1986); *Goss v. People*, 272 Ill. App. 3d 498 (1995); see also *People v. Kern*, 182 Ill. App. 3d 414 (1989). Defendant maintains that once Spanish-speaking deputies assisted in the process of detainment, their absence during the recital of the warning to motorist was a revocation of an additional right. We disagree.

In *Elledge*, the arresting officer asked the defendant to submit to an alcohol breath test. *Elledge*, 144 Ill. App. 3d at 281. Defendant refused to take the breath test and requested the officer take him to obtain a blood test for blood-alcohol content. *Id.* The officer advised defendant that he could take a blood test at his own expense (*id.* at 282), thus affording defendant an additional right not required by law. The officer never arranged for the blood test, and defendant was deemed to have not refused testing. *Id.* The appellate court agreed with the trial court, on the narrow facts presented, that defendant did not refuse to submit to testing because of the agreement to provide the blood test. *Id.* at 283.

In *Kern*, law enforcement gave the defendant the opportunity to consult with counsel. *Kern*, 182 Ill. App. 3d at 415-16. Defendant phoned an Iowa attorney, who advised him to consult with an Illinois attorney. *Id.* The officer would not permit an additional telephone call. *Id.* at 416. The court recognized that defendant did not initially have the right to consult with an attorney; however, in allowing defendant to consult an attorney, the officers could not consider defendant to have refused the test merely because he pressed a request to consult an Illinois attorney. *Id.* at 416-17.

In *Goss*, law enforcement also afforded the defendant the additional "right" to consult with his attorney, who was present in the police station. *Goss*, 272 Ill. App. 3d at 499. The court found that defendant's insistence on more fully consulting with his attorney should not be considered a refusal to submit to the Breathalyzer test under the reasoning in *Kern. Id.* at 501. The reviewing court concluded that the trial court's judgment that petitioner refused to submit to the test was against the manifest weight of the evidence. *Id.*

We do not believe *Kern* and *Goss* were correctly decided. By allowing the driver to consult with counsel, the officers did not give the driver the right to talk to attorneys until sober. To the extent that they apply in this matter, we decline to follow them. Conversely, assuming these cases were decided correctly, the presence of a law enforcement officer that can speak Spanish in order to administer field sobriety tests and a breath test does not equate to affording defendant a right not required by law. Deputy Villalobos was not at the scene of the traffic stop for the benefit of defendant. Villalobos was at the scene for the benefit of Mathis to properly

conduct the field sobriety tests, ensuring admissibility of any evidence of intoxication. "[F]ield sobriety tests are only valid when properly administered and properly scored in strict compliance with [National Highway Traffic Safety Administration] standards." 25 Ill. L. and Prac. *Illinois DUI Law and Practice Guide* § 5:144 (2019); see also *People v. McKown*, 236 Ill. 2d 278, 305-11 (2010) (whether field sobriety test was performed correctly goes to test's admissibility). Similarly, Deputy Martinez was not present for the benefit of defendant. Martinez was present to help Mathis collect evidence of defendant's intoxication by giving instruction on how to provide a sample for the breath test.

¶ 35    The presence of law enforcement officers that could speak Spanish was for the purpose of collecting evidence against defendant. Their presence did not constitute an additional afforded right to defendant not required by law.

¶ 36    Defendant failed to make a *prima facie* case for rescission.

¶ 37                                III. CONCLUSION

¶ 38    We reverse the judgment of the circuit court of Will County and remand the cause for the trial court to enter an order denying defendant's petition to rescind.

¶ 39    Reversed and remanded with directions.

¶ 40    JUSTICE LYTTON, specially concurring:

¶ 41    I agree with the majority's opinion that defendant's petition to rescind should have been denied. I write separately because I disagree with the majority's statement, in *dicta*, that *Kern* and *Goss* were wrongly decided. See *supra* ¶ 34.

¶ 42    *Kern* and *Goss* dealt with the right to counsel. In both cases, the court held that once a defendant is afforded the additional right to consult counsel, the revocation of that right vitiates the effect of any refusal to submit to an alcohol breath test. See *Kern*, 182 Ill. App. 3d at 416; *Goss*, 272 Ill. App. 3d at 501. Here, defendant claims that when a Spanish-speaking interpreter is available, the statutory summary suspension warnings must be translated for him. This request is not the equivalent of the constitutional right to counsel. It is a different argument involving different facts and a different legal standard. Accordingly, *Kern* and *Goss*, while still good law, do not apply to this case.