No. 2--07--0134          Filed: 3-7-08

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 06--DT--767 |
| MARC SEVERSON, | ) ) ) | Honorable William P. Brady, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE BYRNE delivered the opinion of the court:

Defendant was arrested for driving under the influence of alcohol (DUI) (625 ILCS 5/11--501(a)(2) (West 2006)). The arresting officer, De Kalb County sheriff's deputy Paul Delisio, served defendant with written notice of the statutory summary suspension of his driving privileges. According to the notice, defendant had refused to submit to testing to determine the content of alcohol or other drugs in his blood. Defendant filed a petition to rescind the suspension and, following a hearing, the trial court granted the petition. The trial court concluded that defendant had not refused to submit to testing. The State filed a timely notice of appeal. We affirm.

At the hearing on defendant's petition, Delisio testified that defendant had been involved in a motor vehicle accident on October 18, 2006. Delisio encountered defendant in a hospital emergency room at about 2 a.m. on that date. Delisio administered the horizontal gaze nystagmus test to defendant to determine his sobriety. According to Delisio, defendant failed the test. Delisio

then placed defendant under arrest for DUI and requested that defendant submit to chemical testing of his blood to determine the level of alcohol or other drugs. Before making the request, Delisio warned defendant pursuant to section 11--501.1(c) of the Illinois Vehicle Code (Code) (625 ILCS 5/11--501.1(c) (West 2006)) that, inter alia, refusal to submit to the requested test would result in the suspension of his driving privileges. According to Delisio, defendant's response to the request was "I respectfully refuse."

Delisio's supervisor, Sergeant Ryan Braden, was present when defendant refused to submit to testing. Braden informed defendant that "under the circumstances we could strap him down and physically take his blood; we don't want to do that." Braden further advised defendant, "We're asking for you to submit without a struggle." Delisio testified that defendant was being given another chance to take the test without having to be tied down. According to Delisio, defendant "agreed to that but he wanted it noted that he still refused." A phlebotomist drew defendant's blood with defendant's full cooperation. The trial court inquired about the results of the testing. Delisio responded that the results had just been received that day and that the testing indicated a blood alcohol level exceeding 0.08.

Braden's testimony was slightly different from Delisio's. Braden testified that he arrived at the hospital after defendant had refused Delisio's request to submit to testing. Outside of defendant's presence, Braden asked Delisio if he had advised defendant that defendant had no right to refuse testing. Delisio replied that he had not. Braden stepped into defendant's room and explained that he had no right to refuse testing. Braden added that, if defendant wanted them to, the officers "would note in the report that [defendant] was refusing and that he wasn't voluntarily giving us his blood." According to Braden:

"[Defendant] told us that he wanted it to be a refusal. I asked him if he would fight us for the blood or if we could take it, and he said that he would not fight and that he wouldn't give us a problem of taking that blood."

As noted, the trial court concluded that defendant had not refused to be tested. Accordingly, the court granted defendant's petition to rescind the statutory summary suspension of his driving privileges. The trial court denied the State's motion for reconsideration, and this appeal followed.

Initially we note that defendant has not filed an appellee's brief. However, the record and the issues raised on appeal are such that review of the merits is appropriate under First Capitol Mortgage Corp. v. Talandis Construction Corp., 63 Ill. 2d 128, 133 (1976).

Section 11--501.1 of the Code (625 ILCS 5/11--501.1 (West 2006)), the so-called "implied consent law," provides that a motorist operating a vehicle on a public highway in Illinois is deemed to have consented that, if arrested for DUI, he or she will submit to chemical testing to determine his or her blood alcohol level. Under the implied consent law, when the arresting officer requests that the motorist submit to testing, the officer must submit a sworn report to the Secretary of State if the motorist either (1) refuses to submit to, or fails to complete, testing or (2) submits to testing that reveals a blood alcohol level of 0.08 or more. When the officer submits such a report, the Secretary of State must summarily suspend the motorist's driving privileges. The suspension period is longer when the motorist refuses to submit to, or fails to complete, the requested tests than when testing reveals a blood alcohol level of 0.08 or more. See 625 ILCS 5/6--208.1(a) (West 2006).

Although defendant initially refused to submit to a blood test, he later permitted his blood to be drawn, after being told that he had no right to refuse and that his blood could be drawn without his consent. According to the State, because defendant stated that he wanted the officers to report

that he refused testing, his compliance did not signify consent to having his blood drawn. In our view, the argument exalts form over substance. In essence, defendant's statement simply reflects that he was submitting to testing under protest. One of the purposes of the implied consent law is to help law enforcement officers gather evidence for DUI prosecutions by inducing motorists to submit to testing. See People v. Myers, 130 Ill. App. 3d 681, 684 (1985). Where, as here, a motorist actually complies with a request for testing and the testing is completed without incident, the form of words he or she uses in responding to the officer's request should not be controlling.

We note that courts have not allowed wordplay to inure to the defendant's advantage, and we see no reason why it should work to the State's advantage either. In People v. Shaffer, 261 Ill. App. 3d 304 (1994), the defendant essentially attempted to negotiate with police to take a blood test rather than the Breathalyzer test that had been requested. Because the defendant would not agree to take the Breathalyzer test despite being asked to do so more than three times, the court concluded that he had refused testing even though he reportedly told the arresting officer, " 'I ain't refusing nothing.' " Shaffer, 261 Ill. App. 3d at 306-07. There is no more reason to punish defendant for his choice of words in this case than there was to reward the defendant in Shaffer for his choice of words. In this regard, it is significant that the police suggested that defendant could frame his response to the request for testing as a refusal, even though he had agreed to cooperate with the testing.

The State also emphasizes that defendant agreed to submit to testing only "once he realized that his lack of consent would not prevent the blood from being obtained." The State cites no authority, however, that a motorist's reasons for submitting to testing have any legal significance.

In addition, the State relies on People v. DuBose, 348 Ill. App. 3d 992 (2004), which involved a summary suspension under section 11--501.6(a) of the Code (625 ILCS 5/11--501.6(a) (West

2000)). Section 11--501.6(a) permits a law enforcement officer to request testing from a motorist ticketed for any nonequipment violation of the Code, if the motorist was involved in an accident resulting in personal injury or death. In DuBose, the defendant was involved in an accident that resulted in injuries to another individual. The defendant was arrested for DUI and was also ticketed for failing to reduce speed to avoid an accident. The defendant was taken to a local hospital, where the arresting officer requested that the defendant submit to testing. After the defendant refused the request, the arresting officer's supervisor informed the defendant that, under the circumstances, his blood could be drawn without his consent. See 625 ILCS 5/11--501.6(b) (West 2000) ("if a driver of a vehicle is receiving medical treatment as a result of a motor vehicle accident, any physician licensed to practice medicine, registered nurse or a phlebotomist acting under the direction of a licensed physician shall withdraw blood for testing purposes *** upon the specific request of a law enforcement officer"). The defendant indicated that he would permit his blood to be drawn, but he wanted it to be reported that he had refused testing. The arresting officer reported to the Secretary of State that the defendant had refused to submit to testing, and the Secretary of State suspended his driving privileges.

Although DuBose is factually similar to this case, the issue raised on appeal was entirely different. The defendant in DuBose never sought a hearing to challenge the suspension of his driving privileges. Instead, he attempted to invoke the doctrine of judicial estoppel to bar the State from introducing evidence of the results of the blood testing in the DUI prosecution. A party asserting judicial estoppel must establish, inter alia, that the opposing party has taken inconsistent positions in different proceedings. See People v. Wisbrock, 223 Ill. App. 3d 173, 175 (1991). The defendant in DuBose argued that, in obtaining the suspension of his driving privileges, the State had taken the

position that he had refused to be tested. According to the defendant, that position was inconsistent with the State's use of the evidence in the DUI prosecution. We disagreed. We reasoned that, because the State could have taken the defendant's blood without his consent, the fact that blood testing was performed did not necessarily imply that the defendant had consented to having blood drawn. DuBose, 348 Ill. App. 3d at 996. Thus, the State's position in suspending the defendant's driving privileges was not necessarily inconsistent with the introduction of the blood-test results. We did not hold, however, that the State was correct in its position that the defendant had refused testing. Because the defendant had not sought a hearing to challenge the summary suspension, the merits of the State's position were not before us. Thus, DuBose is inapposite.

The record supports the trial court's conclusion that defendant did not refuse to submit to testing of his blood. Accordingly, we hold that the trial court did not err in rescinding the statutory summary suspension of defendant's driving privileges. In so holding, we are cognizant that, given Delisio's testimony about the blood-test results, defendant may have been subject to having his driving privileges suspended on the basis of his blood alcohol level. However, defendant's driving privileges were suspended solely on the basis that he refused testing, and we do not believe the suspension may be upheld on the alternative basis of blood-test results that were never reported to the Secretary of State and that were apparently first made available to law enforcement officials on the day of the rescission hearing. Had defendant's driving privileges been suspended based on the blood-test results, the suspension would have been shorter than the suspension defendant received when it was erroneously reported to the Secretary of State that defendant had refused testing. Section 2--118.1(b) of the Code provides, in pertinent part, that at the conclusion of a rescission hearing "the circuit court shall sustain or rescind the suspension and immediately notify the Secretary of State."

625 ILCS 5/2--118.1(b) (West 2006). There is no provision for reducing the period of the suspension. The suspension cannot be sustained, so the trial court properly rescinded it. Furthermore, a fair judicial hearing on a petition to rescind a statutory summary suspension requires that the defendant have notice of the basis of the suspension. To uphold a suspension based on test results that were unknown before the hearing would compromise the fairness of the proceeding and deprive the defendant of a meaningful opportunity to challenge the suspension.

For the foregoing reasons, the judgment of the circuit court of De Kalb County is affirmed.

Affirmed.

O'MALLEY and GROMETER, JJ., concur.