NO. 4-07-0150          Filed 4/21/08

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from |
|      Plaintiff-Appellee, | ) | Circuit Court of |
|      v. | ) | Champaign County |
| EARL G. EHLEY, | ) | No. 06DT707 |
|      Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Richard P. Klaus, |
| | ) | Judge Presiding. |

_____

JUSTICE MYERSCOUGH delivered the opinion of the court:

In October 2006, defendant, Earl G. Ehley, was involved in a motor-vehicle accident and transported to the emergency room at Carle Hospital. Once there, medical personnel performed chemical testing on defendant's blood, which revealed a blood-alcohol concentration (BAC) of 0.204. Thereafter, Deputy Jeff Verckler of the Champaign County sheriff's department arrested defendant for driving under the influence (DUI) (625 ILCS 5/11-501 (West 2006)) of alcohol, read him the warning-to-motorists notice, and requested defendant submit to chemical testing but did not tell defendant of the test performed by medical personnel. Defendant refused to submit to chemical testing. After the Secretary of State suspended defendant's license for the refusal, defendant filed a petition to rescind his statutory summary suspension. Following a hearing, the trial court found

defendant failed to make a prima facie case for rescission and granted the State's motion for a directed finding.

On appeal, defendant argues that once blood is drawn and tested pursuant to emergency medical treatment, implied consent is satisfied and no further request for chemical testing by law enforcement is necessary or appropriate. This argument requires an examination of two sections of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-501.1, 11-501.4(a) (West 2006)). Section 11-501.1 of the Vehicle Code (625 ILCS 5/11-501.1 (West 2006)) (the law-enforcement-directed testing provision) provides as follows: (1) an arresting officer may request that a motorist submit to chemical testing; (2) a motorist's refusal to submit to testing will result in statutory summary suspension; and (3) the test results are admissible in any civil or criminal action arising out of the DUI arrest. 625 ILCS 5/11-501.1(a),(c) (West 2006). Section 11-501.4(a) of the Vehicle Code (625 ILCS 5/11-501.4(a) (West 2006)) (the medical-personnel-directed testing provision) provides that the results of chemical testing performed by medical personnel--but not at the request of the arresting officer--while a person is receiving medical treatment in a hospital emergency room for injuries resulting from a motor-vehicle accident are admissible in criminal prosecutions for DUI. For the reasons that follow, we affirm.

- 2 -

## I. BACKGROUND

On October 7, 2006, defendant was arrested for DUI (625 ILCS 5/11-501(a)(2) (West 2006)). The arresting officer, Deputy Verckler, prepared a sworn report indicating defendant refused to submit to chemical testing. The sworn report identified the following as reasonable grounds for believing defendant violated section 11-501 of the Vehicle Code: (1) defendant was at fault in a two-vehicle accident when he ran a red light; (2) defendant had an odor of alcohol on his breath and a bar stamp on his hand; and (3) blood taken at the hospital for emergency treatment disclosed a BAC of 0.204. The citation issued to defendant indicated personal injury ("driver injury only" was not marked on the citation) had occurred as a result of the accident. Thereafter, the office of the Secretary of State notified defendant that his driver's license was suspended for three years, effective November 22, 2006.

On December 4, 2006, defendant filed a petition to rescind the statutory summary suspension. Defendant asserted that he did not refuse to submit to or fail to complete chemical testing upon the request of the arresting officer.

On January 26, 2007, the trial court held a hearing on defendant's petition to rescind the statutory summary suspension. Defendant testified that on October 7, 2006, he was involved in a motor-vehicle accident that rendered him unconscious. Defendant

was taken by ambulance to the hospital and admitted to the intensive-care unit (ICU). Defendant had no recollection of having a conversation with a police officer. Defendant did not recall being asked to give a breath or blood test or consenting or refusing to consent to such testing. Before defendant left the hospital, a nurse told him that his blood had been tested to determine his BAC.

On cross-examination, defendant recalled that on Saturday, October 6, 2006, from approximately 9 p.m. to 11:45 p.m., he was at a bar. He drank eight beers. Defendant recalled driving toward the railroad tracks on Airport Road and trying to stop. The next thing he remembered was waking up in the ICU.

After defendant's testimony, the State moved for a directed finding. Because defendant recalled nothing, the State argued he had failed to make a prima facie case that he did not refuse chemical testing. The State pointed out that the arresting officer's sworn report indicated defendant's blood had been drawn and testing disclosed a BAC of 0.204. The State argued, however, that this did not demonstrate defendant consented because it was not chemical testing performed at the request of the arresting officer.

Defendant argued he made a prima facie case that he did not refuse chemical testing. Defendant argued that Deputy Verckler knew defendant's BAC when he completed his report.

- 4 -

Defendant claimed that Deputy Verckler's report, indicating defendant refused testing, was "disingenuous at best."

The trial court noted that defendant had presented no evidence indicating that the chemical test disclosing the 0.204 BAC was administered at the direction of the arresting officer as provided in section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(a) (West 2006) (providing that any person who drives a motor vehicle is deemed to have given consent to testing to determine whether he is intoxicated and that such test "shall be administered at the direction of the arresting officer")). The court asked defendant what evidence he presented would enable the court to make that finding.

Given the evidence that the citations were issued and defendant's BAC had been obtained before he left the hospital, defendant argued he could reasonably assume that he had consented. Defendant stated that if testimony from the officer was necessary, he wanted to reopen the evidence. Over the State's objection, the trial court allowed defendant to reopen the evidence.

Deputy Verckler testified that on October 7, 2006, he investigated an accident that occurred on Airport Road in Champaign County. Deputy Verckler briefly talked to witnesses at the scene, had the vehicles towed, and took a few measurements. Thereafter, Deputy Verckler went to Carle Hospital to make

contact with defendant.

Upon his arrival at the hospital, Deputy Verckler spoke to hospital staff about defendant's condition and asked the staff whether blood had been taken. Hospital staff told him defendant's BAC was 0.204.

Deputy Verckler went to the ICU to see defendant. Defendant had four or five nurses working around him. Defendant had a breathing tube down his throat, and his arms were restrained because he was struggling with the nurses. Defendant appeared to be going in and out of consciousness. Deputy Verckler did not interfere and just waited.

Deputy Verckler believed he had probable cause to charge defendant with DUI based on (1) statements of a witness at the scene and the nurses that they could smell alcohol on defendant; (2) the bar stamp on defendant's hand; and (3) the BAC results from the hospital. Therefore, Deputy Verckler wrote defendant a citation.

Deputy Verckler intended to "read this to him unconscious, because he's not deemed to withdraw consent." However, by the time Deputy Verckler completed the citation and started talking to defendant, defendant appeared more coherent. Defendant could see and respond to Deputy Verckler. Deputy Verckler asked defendant if he knew where he was. Deputy Verckler did not recall whether defendant shook his head "yes" or

"no." Deputy Verckler told defendant he was in an accident, had obviously been drinking, and was technically being placed under arrest for DUI but would stay at the hospital. Deputy Verckler then told defendant he was going to read the warning to motorist to him and ask if he wanted to consent to a blood and urine draw. Because defendant was now responding to him and shaking his head, Deputy Verckler changed his original plan to simply read the warning to defendant and take the blood and urine.

Deputy Verckler read the warning to motorist and asked defendant if he wanted to give blood and urine to be tested. Defendant shook his head no. Deputy Verckler then testified that he wanted to be sure, so he said, "just so I understand, you are refusing, then?" Defendant shook his head "yes." According to Deputy Verckler, defendant "didn't talk; but he confirmed it twice." Deputy Verckler did not recall whether he told defendant he already had his BAC results, but he usually did not tell that to motorists.

On cross-examination, Deputy Verckler testified that he did not direct hospital personnel to draw blood from defendant. It had already been done, and the results had come back when Deputy Verckler arrived at the hospital.

After Deputy Verckler testified, the State renewed its motion for a directed finding. The trial court noted that defendant did not recall what happened and did not rebut the

deputy's testimony. The court also noted that the evidence clearly established that defendant's BAC was obtained through a blood draw at the hospital before Deputy Verckler arrived at the hospital. As such, the court found it would be impossible to conclude that the test was performed at the direction of the officer. Consequently, the court granted the State's motion for a directed finding and denied the petition to rescind the statutory summary suspension.

This appeal followed.

## II. ANALYSIS

### A. Defendant Did Raise a Statutory Ground To Challenge his Summary Suspension

The State argues that defendant has not raised a ground permitted by section 2-118.1(b) of the Vehicle Code (625 ILCS 5/2-118.1(b) (West 2006)), which limits the issues that can be raised in a petition to rescind a statutory summary suspension. We disagree.

A petition to rescind a statutory summary suspension must state the grounds upon which the summary suspension should be rescinded. People v. McClure, 218 Ill. 2d 375, 380, 843 N.E.2d 308, 311 (2006). By statute, the grounds upon which the petition may be based are limited to whether (1) the motorist was lawfully arrested for DUI; (2) the arresting officer had reasonable grounds to believe that the motorist was under the influence of alcohol, drugs, or both; (3) the motorist refused to

- 8 -

submit to chemical testing after being advised that such refusal would result in a statutory summary suspension of driving privileges; and (4) the motorist submitted to chemical testing and failed the test.  See 625 ILCS 5/2-118.1(b) (West 2006).  The supreme court has also held that the trial court is implicitly authorized to consider defects in the officer's sworn report (see People v. Badoud, 122 Ill. 2d 50, 54, 521 N.E.2d 884, 886 (1988)) and challenges to the validity of the chemical test (see People v. Hamilton, 118 Ill. 2d 153, 160, 514 N.E.2d 965, 969 (1987)).

In his petition, defendant alleged he did not refuse to submit to and/or complete the required chemical test upon request of the arresting officer.  On appeal, defendant essentially argues that he did not refuse to submit to the chemical testing because the relevant statutory provisions can be interpreted to provide that once chemical testing is performed by medical personnel pursuant to section 11-501.4 of the Vehicle Code, the arresting officer cannot ask a motorist to perform further chemical tests.  That is, according to defendant, if the arresting officer cannot ask for further testing, the motorist cannot be charged with having refused.  Because this argument challenges whether defendant refused to submit to chemical testing, defendant has raised a proper ground for a petition to rescind a statutory summary suspension.  See 625 ILCS 5/2-118.1(b)(3) (West 2006) (whether the motorist refused to submit

to chemical testing after being advised that such refusal would result in a statutory summary suspension of driving privileges is a proper ground to raise in a petition to rescind the statutory summary suspension).

### B. The Trial Court Properly Granted the State's Motion for a Directed Finding

Defendant argues the trial court erred when it granted the State's motion for a directed finding. We disagree.

### 1. Standard of Review

The parties dispute the appropriate standard of review. Defendant argues this court reviews de novo whether a defendant has made a prima facie case to rescind statutory summary suspension. Defendant also argues this case essentially involves statutory interpretation, which is also reviewed de novo.

The State argues that where, as here, the trial court's decision on whether a defendant made a prima facie case involves a credibility determination, that decision will not be disturbed unless it is against the manifest weight of the evidence. The State rejects defendant's characterization of the issue as one of statutory interpretation because (1) the statute permitted what occurred here, and (2) defendant seeks judicial intervention in a legislative scheme that he does not claim is unconstitutional.

In a statutory summary suspension hearing, the defendant motorist bears the burden of proof to establish a prima facie case for rescission. People v. Granados, 332 Ill. App. 3d

860, 862, 773 N.E.2d 1272, 1274 (2002).  The defendant must satisfy his burden of proof by a preponderance of the evidence.  Granados, 332 Ill. App. 3d at 862, 773 N.E.2d at 1274.  After the defendant establishes a prima facie case, the burden shifts to the State to come forward with evidence justifying the suspension.  People v. Smith, 172 Ill. 2d 289, 295, 665 N.E.2d 1215, 1217-18 (1996).  A trial court's factual findings on a petition to rescind will be reversed only where such findings are against the manifest weight of the evidence.  People v. Rush, 319 Ill. App. 3d 34, 38, 745 N.E.2d 157, 161 (2001).

However, when the trial court's determination is based solely on the review of written documents, the appellate court reviews de novo the determination that the defendant failed to make a prima facie case.  People v. Rozela, 345 Ill. App. 3d 217, 222, 802 N.E.2d 372, 376 (2003).  Moreover, where the ultimate issue involves statutory construction, review is also de novo.  People v. Kavanaugh, 362 Ill. App. 3d 690, 695, 840 N.E.2d 807, 811 (2005) (review is de novo in statutory summary suspension case where the ultimate issue was whether the Vehicle Code imposed a duty on the arresting officer to make sure defendant was not confused about whether he was being offered a preliminary breath test or a breath test admissible in a DUI prosecution).

In this case, the issue is one of statutory construction, i.e., whether testing performed pursuant to section

- 11 -

11-501.4(a) precludes an arresting officer from seeking further chemical testing under section 11-501.1(a), thereby rendering a refusal of further chemical testing a nullity.  The trial court concluded in the negative and therefore found defendant had failed to make a prima facie case for rescission.  This court reviews that finding de novo.

### 2. Defendant Failed To Make a Prima Facie Case That He Did Not Refuse Chemical Testing

Defendant argues the legislature has created a loophole by which the State can derive the benefit of having the BAC admitted into evidence pursuant to section 11-501.4(a) of the Vehicle Code (625 ILCS 5/11-501.4(a) (West 2006)) and still derive the benefit of arguing that a motorist refused to submit to chemical testing requested by the arresting officer pursuant to section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(a) (West 2006)).  In doing so, according to defendant, the State can punish a motorist for being in excess of the legal limit and further punish a motorist by imposing harsher penalties for his refusal to consent to further chemical testing.

### a. Examination of Statutory Summary Suspension and Implied Consent

Pursuant to the implied-consent statute, section 11-501.1 of the Vehicle Code (625 ILCS 5/11-501.1 (West 2006)), any motorist driving on an Illinois public highway who is arrested for DUI is deemed to have consented to chemical testing of the

blood, breath, or urine to determine his BAC. People v. Fisher, 184 Ill. 2d 441, 444, 705 N.E.2d 67, 69-70 (1998). A "person who is dead, unconscious, or who is otherwise in a condition rendering the person incapable of refusal, shall be deemed not to have withdrawn the consent" provided in section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(b) (West 2006)). Otherwise, if the motorist is not dead, unconscious, or in a condition rendering him incapable of refusal, the arrested motorist may withdraw the implied consent and refuse testing. Fisher, 184 Ill. 2d at 444, 705 N.E.2d at 70.

A person asked to submit to law-enforcement-directed testing pursuant to section 11-501.1(a) must be warned by the officer that (1) refusing to submit to a test will result in a statutory summary suspension and (2) submitting to a test that shows an alcohol concentration of 0.08 or greater will result in statutory summary suspension. 625 ILCS 5/11-501.1(c) (West 2006). The Illinois Supreme Court has repeatedly stated that the warnings are not meant to enable an "'informed choice'" but are an evidence-gathering tool for the State. People v. Johnson, 197 Ill. 2d 478, 486-87, 758 N.E.2d 805, 810-11 (2001). That is, the suspension provisions are meant to motivate drivers to submit to testing. Johnson, 197 Ill. 2d at 487, 758 N.E.2d at 811.

The length of the administrative suspension for a refusal depends on the motorist's past record. See 625 ILCS 5/6-

- 13 -

208.1(a) (West 2006).  In this case, defendant was not a first-time offender.  Therefore, the Secretary of State administratively suspended defendant's license for three years rather than one year.  See 625 ILCS 5/6-208.1(a)(3) (West 2006).  The statutory-summary-suspension procedure is civil in nature and not part of the criminal prosecution for DUI.  Fisher, 184 Ill. 2d at 445, 705 N.E.2d at 70.

   b. The Vehicle Code's Statutory Provisions Relating
to Law-Enforcement-Directed Testing (Section 11-501.1)
and Medical-Personnel-Directed Testing
(Section 11-501.4(a)) Operate Independently

   Section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(a) (West 2006)) addresses chemical testing performed at the direction of the arresting officer.  When a police officer asks a motorist to submit to a chemical test, the officer shall warn the motorist of the consequences of both refusing to submit to the test and of submitting to the test if the motorist's drug and/or alcohol concentration exceed legal limits.  See 625 ILCS 5/11-501.1(c) (West 2006).  If the motorist refuses testing, or the test discloses a drug and/or alcohol concentration above the legal limit, the officer must submit a sworn report to the proper circuit court and the Secretary of State.  See 625 ILCS 5/11-501.1(d) (West 2006).  The Secretary of State must, upon receipt of the sworn report, enter the appropriate statutory summary suspension.  See 625 ILCS 5/11-501.1(e) (West 2006).

   The results of tests performed pursuant to section 11-

- 14 -

501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(a) (West 2006)) are admissible in any civil or criminal action arising out of a defendant's arrest for a DUI offense, a similar local ordinance, or a statutory-summary-suspension proceeding, so long as certain requirements, such as the blood being taken by a qualified person, are met.  See 625 ILCS 5/11-501.2(a) (West 2006).

In contrast, section 11-501.4(a) of the Vehicle Code (625 ILCS 5/11-501.4(a) (West 2006)) which pertains to medical-personnel-directed testing, provides that the results of blood tests performed by medical personnel while a person is receiving medical treatment in a hospital emergency room are only admissible in evidence in prosecutions for DUI, similar provisions of a local ordinance, or reckless homicide prosecutions, so long as certain criteria are met.  See 625 ILCS 5/11-501.4(a) (West 2006).  Specifically, section 11-501.4(a)(1) provides as follows:

> "Notwithstanding any other provision of
> law, the results of blood tests performed for
> the purpose of determining the content of
> alcohol *** of an individual's blood con-
> ducted upon persons receiving medical treat-
> ment in a hospital emergency room are admis-
> sible in evidence as a business[-]record
> exception to the hearsay rule only in prose-
> cutions for any violation of [s]ection 11-501

- 15 -

of [the Vehicle] Code or a similar provision
of a local ordinance, or in prosecutions for
reckless homicide brought under the Criminal
Code of 1961, when each of the following
criteria are met:

(1) the chemical tests performed upon an
individual's blood were ordered in the regu-
lar course of providing emergency medical
treatment and not at the request of
law[-]enforcement authorities."  625 ILCS
5/11-501.4(a)(1) (West 2006).

Section 11-501.4 contains additional criteria, but the parties do
not dispute the criteria contained in section 11-501.4 were met.

Defendant asks this court to close the alleged loophole
by interpreting the statutes "as they were surely intended."
Defendant asserts that section 11-501.4 of the Vehicle Code (625
ILCS 5/11-501.4 (West 2006)) can be interpreted to provide that
once blood is taken and tested pursuant to emergency medical
treatment, implied consent is satisfied, and no further inquiry
by law enforcement is necessary or appropriate as to the issue of
chemical testing.

When construing a statute, the primary consideration is
to determine and give effect to the legislature's intent. People
v. Skillom, 361 Ill. App. 3d 901, 906, 838 N.E.2d 117, 122

- 16 -

(2005). A court must consider the statute in its entirety. People v. Davis, 199 Ill. 2d 130, 135, 766 N.E.2d 641, 644 (2002). "The most reliable indicator of legislative intent is the language of the statute, which, if plain and unambiguous, must be read without exception, limitation, or other condition." Davis, 199 Ill. 2d at 135, 766 N.E.2d at 644. Statutory interpretation is not a means by which this court may rewrite statutes in "ways that contravene their clear and unambiguous language." People v. Bywater, 223 Ill. 2d 477, 485, 861 N.E.2d 989, 994 (2006).

The purpose of the statutory-summary-suspension procedure is to quickly remove impaired drivers from the highway. Kavanaugh, 362 Ill. App. 3d at 695, 840 N.E.2d at 811. Section 11-501.1 of the Vehicle Code (625 ILCS 5/11-501.1 (West 2006)) should be liberally construed to accomplish that purpose. Kavanaugh, 362 Ill. App. 3d at 695, 840 N.E.2d at 811. In fact, the legislature enacted the statutory-summary-suspension procedure as a system separate from criminal prosecutions "[i]n recognition of the fact that it often takes a very long time for the State to prosecute impaired drivers and remove their drivers' licenses." People v. Moore, 138 Ill. 2d 162, 166, 561 N.E.2d 648, 650 (1990).

In this case, the plain language of sections 11-501.1 and 11-501.4(a) indicate that each applies to a distinct situa-

tion.  That is, the results of medical-personnel-directed testing are admissible only in DUI prosecutions, similar provisions of local ordinances, or in reckless-homicide prosecutions and are not admissible in statutory-summary-suspension proceedings.  See People v. Massie, 305 Ill. App. 3d 550, 559, 713 N.E.2d 110, 116 (1999) (finding that the legislature has chosen to limit the admissibility of results obtained pursuant to section 11-501.4(a) to criminal prosecutions and not statutory-summary-suspension proceedings).  In contrast, results of law-enforcement-directed testing are admissible in any civil or criminal proceeding arising out of the DUI arrest and statutory-summary-suspension proceedings.  See 625 ILCS 5/11-501.2(a) (West 2006) (providing for the admissibility of chemical testing in any civil or criminal proceeding arising out of a DUI and proceedings pursuant to section 2-118.1 of the Vehicle Code (625 ILCS 5/2-118.1 (West 2006)) so long as certain requirements are met, such as the tests being performed according to certain standards).

The legislature limited the use of medical-personnel-directed testing by making the results of such testing inadmissible in a statutory-summary-suspension proceeding.  As a result, even when medical-personnel-directed testing has been performed pursuant to section 11-501.4(a) (625 ILCS 5/11-501.4(a) (West 2006)), the arresting officer must seek chemical testing pursuant to section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-

501.1(a) (West 2006)) to preserve the State's ability to summarily suspend the motorist's license. See, e.g., People v. Coffin, 305 Ill. App. 3d 595, 598-600, 712 N.E.2d 909, 911-12 (1999) (holding that the State is not estopped from using the result of a blood-alcohol test performed on a blood sample obtained in a hospital emergency room to prosecute the defendant for DUI even though the State previously used the defendant's refusal to submit to a blood-alcohol test to obtain summary suspension of his driver's license as the positions taken by the State were not factually inconsistent). Consequently, the arresting officer did not act improperly by asking defendant to submit to a chemical test even though he knew hospital staff had already drawn blood and determined defendant's BAC. The Secretary of State properly suspended defendant's driver's license when defendant revoked his implied consent.

This court is not persuaded by the recent Second District Appellate Court decision in People v. Severson, No. 2-07-0134 (March 7, 2008), ___ Ill. App. 3d ___, ___ N.E.2d ____. In Severson, the defendant initially refused to submit to testing but later permitted his blood to be drawn after being told he could not refuse and his blood could be taken regardless of his refusal. The Severson court held that the record supported the trial court's conclusion that the defendant had not refused to consent and affirmed the rescission of the defendant's statutory

- 19 -

summary suspension.

While this court does not agree with the Severson decision, this case is nonetheless distinguishable.  In this case, defendant does not challenge whether he refused to consent. He argues the State had no basis on which to ask defendant to consent when the State already had the results of the medical-personnel-directed testing.  Moreover, Severson did not involve medical-personnel-directed testing, which is not admissible in statutory-summary-suspension proceedings.  See 625 ILCS 5/11-501.4(a) (West 2006) (results of blood tests performed by medical personnel while a person is receiving medical treatment in a hospital emergency room are only admissible in evidence in DUI prosecutions, similar provisions of a local ordinance, or reckless-homicide prosecutions); Massie, 305 Ill. App. 3d at 559, 713 N.E.2d at 116 (finding that the legislature has chosen to limit the admissibility of results obtained pursuant to section 11-501.4(a) of the Vehicle Code to criminal prosecutions and not statutory-summary-suspension proceedings).  If defendant herein had consented, his blood would have been drawn and those test results would have been used to statutorily suspend defendant's driver's license.  Under defendant's theory, once medical-personnel-directed testing occurs, the State would not be permitted to request defendant's consent, and would be unable to use the medical-personnel-directed test results in a statutory-

summary-suspension proceeding, and his licence could not be summarily suspended. Nothing in the plain language of the statute compels such a result.

To summarize, reading the statutes as defendant requests would contravene the statutes' plain language and purpose to protect highway travelers, quickly remove impaired drivers from the highways, and motivate drivers to submit to testing. If an arresting officer cannot request further chemical testing once medical-personnel-directed testing has been performed, the Secretary of State would have no basis on which to suspend a motorist's license because the results of the medical-personnel-directed testing would not be admissible in a statutory-summary-suspension proceeding. The statutes clearly provide that even where medical-personnel-directed testing has been performed, the arresting officer may request further chemical testing pursuant to section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(a) (West 2006)) for use in civil, criminal, and statutory-summary-suspension proceedings. A motorist's refusal to submit to law-enforcement-directed testing pursuant to section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-501.1(a) (West 2006)), even when medical-personnel-directed testing has been performed pursuant to section 11-501.4(a) of the Vehicle Code (625 ILCS 5/11-501.4(a) (West 2006)), will result in a statutory summary suspension of his driver's license.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment.

Affirmed.

APPLETON, P.J., concurs.

COOK, J., specially concurs.

JUSTICE COOK, specially concurring:

I disagree with the majority's conclusion that the results of medical-personnel-directed testing under section 11-501.4 of the Vehicle Code (625 ILCS 5/11-501.4 (West 2006)) are not admissible in statutory-summary-suspension proceedings. Slip op. at 16. As the majority points out, such results are admissible in DUI prosecutions. Slip op. at 16. DUI convictions are admissible in mandatory revocation proceedings by the Secretary of State. 625 ILCS 5/6-205(a)2 (West 2006). If the Secretary of State is entitled to consider the DUI conviction, he is also entitled to consider the evidence on which that conviction is based.

I recognize that a summary suspension will usually take place quickly, before there has been a DUI conviction. That is the whole purpose of the summary-suspension procedure. That is no reason, however, to bar the Secretary's consideration of evidence admissible in DUI proceedings. The fact that section 11-501.4(a) of the Vehicle Code (625 ILCS 5/11-501.4(a) (West 2006)) does not explicitly state that the Secretary must be notified of medical-personnel-directed testing results is not significant. The statute makes no provision that the Secretary may <u>not</u> be notified of such testing. Explicit provisions for disclosure in some cases do not rule out the possibility of disclosure in other cases.

- 23 -

Nevertheless, I agree with the majority that the fact that medical-personnel-directed testing has been performed does not prevent (1) an arresting officer from requesting that a driver submit to chemical testing under section 11-501.1(a) of the Vehicle Code (625 ILCS 5/11-501(a) (West 2006)) or (2) the State from punishing the driver for refusing to submit to that testing under section 6-208.1 of the Vehicle Code (625 ILCS 5/6-208.1 (West 2006)). Because the chemical testing is more likely to produce quick results that may be acted on by the Secretary of State, medical-personnel-directed testing is not an alternative which may be used in place of chemical testing.