2023 IL App (1st) 210896-U

SIXTH DIVISION
June 30, 2023

No. 1-21-0896

NOTICE: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of |
| Plaintiff-Appellee, | ) ) | Cook County. |
| v. | ) ) | No. TN 798-786 |
| JARED STUBBLEFIELD, | ) ) ) | Honorable Athanasios S. Sianis, |
| Defendant-Appellant. | ) ) | Judge Presiding. |

PRESIDING JUSTICE MIKVA delivered the judgment of the court.
Justices C.A. Walker and Oden Johnson concurred in the judgment.

**O R D E R**

¶ 1   *Held*:   Defendant's convictions for disorderly conduct and illegal transportation of alcohol are affirmed where defendant failed to demonstrate that (1) he was prevented from filing a motion to suppress evidence at his trial, (2) the filing fees he was asked to pay violated his constitutional rights, (3) the court "forced him to testify," or that (4) the trial court's failure to properly admonish him as to his rights to file an appeal prejudiced him in such a way that remand is required.

¶ 2   Following a bench trial, where he represented himself *pro se*, defendant Jared Stubblefield

was found guilty of disorderly conduct and illegal transportation of alcohol. He was sentenced to

six months of supervision and ordered to pay a $250 fine and complete 25 hours of community service. He appeals the convictions, arguing that the trial court did not allow him to file a motion to suppress evidence and that his constitutional rights were violated when he was forced to pay a $40 filing fee in the clerk's office. He also argues that the trial court essentially "forced him to testify" and that it "convict[ed] [him] without reading [him] his rights to appeal." We affirm.

¶ 3                                    I. BACKGROUND

¶ 4                         A. Citations and Preliminary Proceedings

¶ 5     On February 28, 2019, at around 2:40 a.m., Mr. Stubblefield was cited for failure to keep his vehicle within lane boundaries, failure to signal, driving while under the influence of alcohol (DUI), and illegal transportation of alcohol.

¶ 6     At a hearing on June 14, 2019, Mr. Stubblefield notified the court that he was ready for trial and that he wished to represent himself. The court asked Mr. Stubblefield questions about his educational background and, upon learning that he lacked any formal legal education, admonished Mr. Stubblefield in accordance with Illinois Supreme Court Rule 401 (eff. July 1, 1984) regarding his rights and the consequences of his decision to proceed *pro se*. Mr. Stubblefield confirmed that he understood his rights and wished to proceed without a lawyer.

¶ 7     Mr. Stubblefield made an oral motion to dismiss, arguing that the charges against him conflicted with his "constitutional right to try to travel freely." The court denied the motion. The State then attempted to tender a DVD containing video footage from the traffic stop to Mr. Stubblefield, but he refused to receive it, apparently irritated that he was being told of the footage on the date the matter was set for trial. The court then offered to continue the matter to give Mr. Stubblefield more time to review the footage and prepare his defense, and Mr. Stubblefield interrupted the court, stating, "what do you mean? I said I'm demanding a trial." The court asked

if Mr. Stubblefield was refusing to take discovery from the State, and he responded, "[a]m I refusing to take what? You sound silly bro." The court then attempted to explain the concept of discovery to Mr. Stubblefield, who continued to interrupt, accusing the court of "trying to hang [him]" and of "having evil intentions." The court then passed the matter.

¶ 8 When the case was called back, Mr. Stubblefield continued to demand a trial and the court once again attempted to get an answer from Mr. Stubblefield as to whether he was refusing to take the State's discovery. Every time the court asked if he was refusing discovery, Mr. Stubblefield answered, "I'm demanding a trial." After several attempts to get Mr. Stubblefield to answer the question, the court stated for the record that Mr. Stubblefield was refusing to take discovery and therefore "foregoing the opportunity to prepare his defense." Upon hearing this, Mr. Stubblefield accused the court of "treason." The court once again passed the matter.

¶ 9 Upon recall, Mr. Stubblefield inquired about "the judge scratch[ing] out something [he] wrote" on his "first demand of trial." The court explained that it had crossed out the phrase "suppression of evidence" because Mr. Stubblefield could not simultaneously demand a trial and move to suppress evidence in the same document. Mr. Stubblefield then stated, "[w]ell, I was just trying to suppress the evidence. I don't want a trial today, I was just trying to suppress the evidence." The court then stated, "[w]ell, that takes us back to where you and I were before, right?" The court explained to Mr. Stubblefield that the State "was trying to give you the evidence and you can't, you don't know what you want to suppress unless you take the evidence, which was what I was trying to get you to do but you were fighting with me about it. So let's revisit that."

¶ 10 The court then asked once again if Mr. Stubblefield accepted the evidence that the State was tendering and explained that, "[a]s a defense attorney, or defendant, or whatever it is, it is always wise to see what evidence they're going to try to use against you so you can prepare to

rebut it or fight the evidence they're going to use, which is why I was trying to get you to take it. It's beneficial for you to know these things." The court asked once again if Mr. Stubblefield was prepared to accept the evidence and he responded, "I said suppress, I want to suppress it."

¶ 11    The back and forth continued like this for several more minutes as Mr. Stubblefield repeatedly refused to accept the State's evidence, while reiterating his desire to suppress it. After more unfruitful dialogue, the matter was continued so that Mr. Stubblefield could prepare an argument for his motion to suppress. The record does not contain any report of proceedings on the hearing on that motion. The next court date in the report of proceedings is the trial date, which was June 21, 2021.

¶ 12                    B. Evidence Adduced at Mr. Stubblefield's Trial

¶ 13    At trial, before the State began its case-in-chief, Mr. Stubblefield was again extensively admonished about his decision to proceed *pro se* and he once again insisted on representing himself, even after the trial judge briefly had him talk with an attorney present in the courtroom, as a friend of the court. The attorney reported back to the court that Mr. Stubblefield was "adamant on wanting to remain *pro se*." Mr. Stubblefield opted for a bench trial and the State then called its first and only witness, Officer William Sierzega of the Chicago Police Department.

¶ 14    Officer Sierzega testified that at around 3 am on February 28, 2019, he was on routine patrol when he observed a vehicle driving erratically on 63rd Street. According to the officer's sworn report, the vehicle was making "abrupt movements," failing to stay in its lane, and it came to a stop about 30 feet before the white stop line. Officer Sierzega and his partner turned on their emergency lights and pulled the car over. Mr. Stubblefield was the driver and nobody else was in the car with him.

¶ 15    Officer Sierzega testified that when he walked to the driver's side of Mr. Stubblefield's car

and asked him to roll down the window, Mr. Stubblefield called him a "b****" several times and refused to roll the window down more than an inch, which "became a point of contention." He asked Mr. Stubblefield multiple times to roll down the window, without success. Through the slightly cracked window, the officer observed Mr. Stubblefield eating food and "looking forward." Officer Sierzega testified that in his experience, "eating food is something that people who have been consuming alcohol tend to do to mask their breath." Mr. Stubblefield seemed "quite confused" and was "irate and he wanted to engage in an argument." Officer Sierzega then asked Mr. Stubblefield to step out of the car and he refused, which caused Officer Sierzega to request that a sergeant come to the scene pursuant to "Chicago Police Department general orders." Sometime later, the sergeant arrived on scene "and attempted to reason with Mr. Stubblefield to no avail."

¶ 16    The State asked Officer Sierzega if he was wearing a body camera that evening and he said that he was. The State then sought leave to publish the video footage captured by Officer Sierzega that night and played about six minutes of footage for the court. This footage is not part of the record on appeal.

¶ 17    Officer Sierzega explained that he was forced to break Mr. Stubblefield's window to get him out of the car, at which point his sergeant quickly handcuffed and moved Mr. Stubblefield to a squad car. Once Mr. Stubblefield was secured, Officer Sierzega searched the vehicle and found a plastic cup with what he described as "alcoholic beverage residue" in it. He also found a bottle of tequila behind the driver's seat that was three-quarters empty.

¶ 18    Officer Sierzega testified that he detected a strong odor of alcohol on Mr. Stubblefield's breath, and he recalled that Mr. Stubblefield's eyes were "bloodshot and glassy." The officer said Mr. Stubblefield also "spoke repetitively," which Officer Sierzega described as an indicator of

alcohol consumption. Mr. Stubblefield refused to submit to a Breathalyzer or field sobriety test and was transported to the police station where he was read his *Miranda* rights.

¶ 19    On cross-examination, Mr. Stubblefield asked Officer Sierzega if he "dislike[d] black people" and inquired about whether the officer experienced a "feeling of joy" when arresting him. Mr. Stubblefield then became frustrated when he asked to see additional footage of the arrest that was not in evidence. The court explained that if there was another video that Mr. Stubblefield wanted to discuss beyond the video published by the State, then it was his responsibility to bring that evidence forward. Mr. Stubblefield was confused and stated that he thought the courtroom had "the evidence." The court explained that "[w]e don't have anything. You have to put on the evidence, sir, it's your case. It's the state's case and your case, so if the state puts on a video you can talk about that video, but any other videos you have to put on if you want to talk about them."

¶ 20    After brief closing arguments, the court found Mr. Stubblefield not guilty of driving under the influence of alcohol, explaining that the State did not meet its burden where the only evidence was an open container of tequila and an empty cup, but no admission of guilt or failed sobriety or chemical test. The evidence did however, in the court's view, support findings of guilt as to disorderly conduct and illegal transportation of alcohol. On these two offenses, the court sentenced Mr. Stubblefield to six months of supervision, 25 hours of community service, and a $250 fine and court costs of $254. This appeal followed.

¶ 21                    II. JURISDICTION

¶ 22    The circuit court entered its judgment finding Mr. Stubblefield guilty of disorderly conduct and illegal transportation of alcohol on June 21, 2021. Mr. Stubblefield filed notice of appeal on July 20, 2021. We have jurisdiction over this appeal under article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6) and Illinois Supreme Court Rules 603 (eff. Feb 6, 2013)

and 606 (eff. July 1, 2017), governing appeals from final judgments in criminal cases.

¶ 23                                    III. ANALYSIS

¶ 24    On appeal, Mr. Stubblefield argues that (1) the trial court erred by not allowing him to file a motion to suppress, (2) the fees he was asked to pay in the clerk's office violated his constitutional rights, (3) the court improperly attempted to force him to testify, and (4) the court failed to adequately explain his appeal rights after finding him guilty.

¶ 25    The State argues that we need not reach the merits of any of these claims because Mr. Stubblefield forfeited them when he failed to object or raise the issues in a written posttrial motion. The State is technically correct. Our supreme court has repeatedly held that to properly preserve an issue for appeal, a defendant must object at trial and raise the issue in a written posttrial motion. *People v. Jackson*, 2022 IL 127256, ¶ 15. Failure to do so "forfeits any review of the error." *Id.* The plain-error rule allows us to bypass these forfeiture principles and consider issues not properly preserved (*People v. Thompson,* 238 Ill. 2d 598, 611 (2010)), but this is a narrow and limited exception (*People v. Hillier*, 237 Ill. 2d 539, 545 (2010)).

¶ 26    As our supreme court explained in *People v. McLaurin*, 235 Ill. 2d 478, 489 (2009), the plain-error doctrine allows us to remedy a "clear and obvious error," regardless of the defendant's forfeiture, only in two situations: "(1) where the evidence in the case is so closely balanced that the jury's guilty verdict may have resulted from the error and not the evidence; or (2) where the error is so serious that the defendant was denied a substantial right, and thus a fair trial." In either case, however, the first step of plain-error review is to determine whether any error occurred, and the burden of persuasion rests with the defendant. *Thompson*, 238 Ill. 2d at 613.

¶ 27    As the State notes in its brief, Mr. Stubblefield makes no plain error argument in his brief. Additionally, while he cites generally to the United States Constitution, and asserts that his "1st,

4th, 5th, and 14th amendments was violated," he does not cite any cases in support of any of his claims, aside from a general reference to *Miranda v. Arizona*, 384 U.S. 436 (1966). Forfeiture aside, however, Mr. Stubblefield's claims are meritless.

¶ 28                                    A. Motion to Suppress

¶ 29     Mr. Stubblefield first argues that the trial court erroneously prevented him from moving to suppress evidence. This notion, however, is contradicted by the transcript of his hearing on June 14, 2019. At that hearing, Mr. Stubblefield repeatedly stated that he wished to "suppress the evidence," but he never explained what specific evidence he wished to suppress and emphatically refused to accept from the State the evidence it was attempting to tender him. The trial court patiently explained to Mr. Stubblefield countless times why it would be beneficial for him to view the evidence the State was trying to share with him, but Mr. Stubblefield repeatedly refused and accused the court of trying to conspire against him.

¶ 30     Eventually, the court accepted Mr. Stubblefield's oral motion to suppress, and asked Mr. Stubblefield to argue it, at which point Mr. Stubblefield merely stated, "I suppress evidence." When the court tried to explain to Mr. Stubblefield that he needed to provide a reason why he sought the suppression of evidence, Mr. Stubblefield demanded "an order from the clerk" and accused the court of trying to "hang" him. The court then, once again, explained that he needed to provide reasons "why [he] want[ed] to suppress this evidence." Mr. Stubblefield responded, "I don't want to *** I don't want whatever you're talking about. I don't want it."

¶ 31     In sum, Mr. Stubblefield's argument that the court prevented him from filing his motion to suppress is meritless and completely disproven by the record. Not only did the court ultimately permit Mr. Stubblefield to move to suppress evidence, but it offered to continue the case to give him more time to prepare his motion and repeatedly explained to him, with astonishing patience,

why it would be in his interest to accept the State's evidence.

¶ 32                                    B. The Filing Fees

¶ 33    Mr. Stubblefield next argues that he was "not allowed to file on some days" and that the "circuit court office" tried to make him "pay a filing fee anytime [he] file[d] anything on this case." He also asserts that the clerk's office "said no" when he asked if he could turn in a fee waiver form, and that they told him he needed to present that form before the court. He further argues that the clerk's office did "not allow [him] to petition against the summary suspension" of his driver's license. He claims that these experiences amounted to a violation of his first amendment rights.

¶ 34    Mr. Stubblefield fails to put forward any discernible argument as to why these fees—which it is not clear he ever paid—were unconstitutional. Moreover, it remains unclear how Mr. Stubblefield was prejudiced by these alleged errors when, as discussed above, he was not prevented from filing his motion to suppress directly before the court, which the court apparently accepted independent of any fee.

¶ 35    As to his specific complaint about not being able to challenge the summary suspension of his license, the court did address this issue. Towards the end of the June 21, 2021, trial date, after the court found Mr. Stubblefield not guilty on the DUI charge, Mr. Stubblefield asked, "[s]ince I'm not guilty of the DUI, don't that dismiss all the suspensions against me?" In response, the court said that there are "two parts of the DUI. There is the criminal part, and there is also the civil part." The court further explained that its finding of not guilty on the DUI did not necessarily affect Mr. Stubblefield's summary suspension, which was a civil penalty. The court then advised Mr. Stubblefield to consult with an attorney on that "different type[] of charge."

¶ 36    The court was correct in its explanation. The summary suspension procedure that resulted in Mr. Stubblefield's driver's license being suspended "is civil in nature and not part of the criminal

prosecution for DUI." *People v. Ehley*, 381 Ill. App. 3d 937, 945 (2008); see also *People v. Moore*, 138 Ill. 2d 162, 166 (1990) (explaining that the legislature enacted this separate civil procedure "in recognition of the fact that it often takes a very long time for the State to prosecute impaired drivers and remove their drivers' licenses," and that automatic summary suspension provides a mechanism to "promptly remove impaired drivers from the road."). The reason Mr. Stubblefield's license was automatically suspended was not because he was found guilty of a DUI in a criminal trial, but because when he was arrested on the suspicion of a DUI, he refused to submit to a chemical test to determine his blood alcohol levels. The consequence for refusing to submit to a test was an automatic license suspension by the Illinois Secretary of State.

¶ 37    Pursuant to section 11-501.1(d) of the Vehicle Code, when a motorist suspected of driving drunk refuses testing, or submits to testing and the test discloses that they were indeed driving over the legal blood alcohol limit, the law enforcement officer "shall immediately submit a sworn report to the circuit court of venue and the Secretary of State." 625 ILCS 5/11-501.1(d) (West 2022). Upon receipt of that sworn report, the Secretary of State "shall enter the statutory summary suspension." *Id.* § 11-501.1(e). People whose licenses are suspended under these procedures have the right to request a hearing challenging their suspension. See *id.* § 11-118.1. But such a proceeding is a civil matter, separate and apart from their criminal case, and "the dismissal of a criminal charge does *not* result in an automatic rescission of the suspension." (Emphasis in original.) *People v. Schaefer*, 154 Ill. 2d 250, 258 (1993). Indeed, at that civil proceeding, unlike in the criminal case, the defendant bears the burden of proof and must establish a *prima facie* case for recission of their suspension. *People v. Smith*, 172 Ill. 2d 289, 294 (1996).

¶ 38    Here, the trial court did not rule on Mr. Stubblefield's objection to his summary suspension because the issue was not properly before the court, as Mr. Stubblefield was in the wrong forum

to challenge that issue. Additionally, there is nothing in the record to suggest that Mr. Stubblefield was prevented from challenging his summary suspension through the proper channels. We therefore reject his argument that he was prevented from challenging his summary suspension.

¶ 39                              C. Forced to Testify

¶ 40    Mr. Stubblefield next argues that the trial court "tried to force [him] to testify on behave [*sic*] of [him]self. Which [he] refused to." He also insinuates that the trial court was biased and "trying to force [him] to say something wrong to incriminate [him]self." As with his claim about his motion to suppress, this argument is contradicted by the trial record.

¶ 41    When the State rested, the court told Mr. Stubblefield, "it is now your turn to tell us your side of what happened. You may proceed whenever you're ready." With this statement, the court was merely indicating to Mr. Stubblefield that it was his turn to put on his case-in-chief, it was not "forcing him to testify." Mr. Stubblefield, however, immediately began to discuss the traffic stop from his perspective, which generated some confusion in the courtroom. The State thought Mr. Stubblefield was making his closing argument, but the court told the State it could cross-examine Mr. Stubblefield if it wished, which caused Mr. Stubblefield to state, "[y]ou're saying like I'm on the stand?" The court told Mr. Stubblefield that he was, because he had just provided testimonial evidence. Mr. Stubblefield then stated that he did not "want to get on the stand." The State then asked one question: "Mr. Stubblefield, you said you were driving your aunt's car." Mr. Stubblefield answered yes, but then stated, "Your Honor, no disrespect but I'm not trying to be cross examined." The court responded to Mr. Stubblefield, "so you're not testifying today, so was that your closing argument then?" And Mr. Stubblefield responded, "that was my closing." The State asked no further questions.

¶ 42    This exchange did not amount to the court forcing Mr. Stubblefield onto the stand. While

11

there was briefly some confusion as to whether Mr. Stubblefield was testifying, the issue was immediately rectified and did not prejudice him in any way. Even Mr. Stubblefield implicitly acknowledges that he was not forced onto the stand when, in his brief, he states that he "refused" to testify. Additionally, in its own closing argument, the State relied entirely on facts established by Officer Sierzega's testimony and made no mention of anything Mr. Stubblefield stated during the brief period when it was unclear as to whether Mr. Stubblefield was testifying or giving his closing argument.

¶ 43     We also reject Mr. Stubblefield's assertion that the court was biased against him, as there is nothing in the trial record to support this assertion. To the contrary, as the State writes in its brief, "[t]he court went out of its way throughout the course of the proceedings to ensure that defendant was well advised as to his rights, and the court showed patience and diligence in responding to defendant's inquiries and outbursts." We agree and we commend the trial court for going above and beyond in explaining to Mr. Stubblefield his rights and obligations throughout what was clearly a frustrating process for all involved.

¶ 44                     D. Failure to Explain Appeal Rights

¶ 45     Mr. Stubblefield's final argument is that the court failed to adequately explain to him his right to file an appeal. We agree with Mr. Stubblefield that after finding him guilty on his two remaining non-DUI charges, the court did not adequately admonish him as to his rights to file an appeal. This was an error, as Illinois Supreme Court Rule 605(a) (eff. June 23, 1967) requires the trial court to advise a defendant on, among other things, how and when to file an appeal after the defendant has been found guilty and ordered to pay a fine.

¶ 46     The issue, however, is that Mr. Stubblefield makes no argument as to how the court's failure to properly admonish him prejudiced him in any way. As we explained in *People v.*

12

*Lambert*, 364 Ill. App. 3d 488, 494 (2006), a defendant who receives incomplete Rule 605(a) admonishments is not entitled to a remand unless he can demonstrate that he was prejudiced or denied " 'real justice' " (quoting *People v. Henderson*, 217 Ill. 2d 449, 470 (2005)). Mr. Stubblefield has not made that showing.

¶ 47 Here, as the State explains in its brief, even if the court failed to properly admonish him, Mr. Stubblefield managed to timely file his notice of appeal and his opening brief, where he raised several issues regarding the trial court's conduct. While Mr. Stubblefield has identified an error in the trial court's failure to properly admonish him, he has not shown how that error prevented him from raising additional arguments or compromised his claims in any way. As in *Lambert*, he "does not suggest any additional issues that he would have raised had he received proper admonishments." *Lambert*, 364 Ill. App. 3d at 494. Accordingly, we agree with the State that there is no need for remand on this issue.

¶ 48 Throughout this appeal, Mr. Stubblefield, still representing himself, has filed repeated motions asking this court to rule, by motion, on the merits of his case. Most of those have been denied but his motion filed May 18, 2022, to rescind his statutory summary suspension, was taken with the case. That motion is hereby DENIED. For the reasons described above (*supra* ¶¶ 35-38) his summary suspension is not part of this appeal.

¶ 49                                IV. CONCLUSION

¶ 50    For the foregoing reasons, we affirm the judgment of the trial court.

¶ 51 Affirmed.